**Samuel FEINMAN, Appellant,**

v.

**A. H. BULL STEAMSHIP COMPANY.**

**No. 10950.**

United States Court of Appeals, Third Circuit.

Argued May 5, 1953.

Reargued April 20, 1954.

Decided Oct. 28, 1954.

W. R. Lorry, Freedman, Landy & Lorry, Philadelphia, David L. Ullman, Philadelphia (Abraham E. Freedman, Philadelphia, on the brief), for appellant.

Charles Lakatos, Thomas E. Byrne, Jr., (Robert Cox, Mark D. Alspach, Krusen, Evans & Shaw, Philadelphia, on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and McLAUGHLIN, Circuit Judges.

BIGGS, Chief Judge.

The suit at bar is a diversity action for personal injuries brought by the plaintiff, Feinman, a marine electrician employed by the Sun Shipbuilding & Dry Dock Company (Sun), to recover damages for injuries sustained when he was struck by a falling hatch beam while working on board the S. S. Angelina, owned and operated by A. H. Bull Steam-

ship Company (Bull) and being refitted while lying at dockside, by Sun at Chester, Pennsylvania. The jury returned a verdict in favor of Bull. A motion to set aside the verdict and to enter judgment for Feinman was denied. See D.C., 107 F.Supp. 153. Judgment was then entered on the verdict in favor of Bull. Feinman appealed.

The Angelina had been loaded with sugar. Her cargo was removed at Philadelphia by the Pennsylvania Sugar Refining Company, the consignee. In order to remove the cargo the Sugar Company took out the 'tween deck level hatch beams, including the one which struck Feinman. The beams were later replaced by the Sugar Company's employees and the Angelina sailed for Chester.

At Chester a number of steam-heating pipes were removed by Sun from the bottom of the tank which was underneath the floor of the No. 1 hold of the Angelina. Sun's employees, using blowtorches, cut the pipes into convenient lengths. On the evening of November 4, 1948, when the accident occurred, Sun removed this debris from the hold. A shoreside crane belonging to and operated by Sun was brought alongside the Angelina. Signals were given to the crane operator from the bottom of the hold by a Sun employee, Spencer, and from the main deck level by Lloyd, another employee of Sun. During the hoisting operations a part of the crane's lifting gear caught under the 'tween hatch beam which fell, striking Feinman who was at work in the hold.

At the time of the accident there were on board the Angelina two seamen standing "security watch" at the gangway and a temporary employee of the steamship company who was on board to relieve the ship's officers. One other Bull employee must be mentioned, the "Port Engineer", whose duty it was to see that the work was satisfactorily performed by Sun. The Port Engineer was on and off the Angelina from time to time and he could not testify with certainty whether or not he was on the vessel at the time of the accident.

It is clear that Bull had relinquished the control of the No. 1 hatch to Sun. Evidence was also presented from which the jury could have found that one side of the coaming slot into which one end of the hatch beam fitted was broken, thus rendering the beam insecure and incapable of being locked into place. There were also circumstances from which the jury could have inferred that the beam was not locked in place at the time of the accident even if the coaming slot was not defective.

At the time the case was tried and when the appeal was first argued on May 5, 1954 the doctrine of "relinquishment of control" held full sway in this circuit.[1] That doctrine seemingly was obliterated by the decision of the Supreme Court in Alaska Steamship Company v. Petterson, 1954, 347 U.S. 396, 74 S.Ct. 601, affirming per curiam the decision of the Court of Appeals for the Ninth Circuit in Petterson v. Alaska S. S. Co., 1953, 205 F.2d 478, 479, and the decision of the Supreme Court reversing per curiam, 1954, 347 U.S. 984, 74 S.Ct. 849, our decision in Rogers v. United States Lines, 3 Cir., 1953, 205 F.2d 57.

The complaint alleges that Feinman was injured because Bull was "careless and negligent, in addition to the unseaworthiness of the vessel", *inter alia,* in failing to provide a reasonable and safe place for Feinman to work, in failing to provide a suitable or proper locking device to keep the beam in place, in supplying defective and broken coaming grooves for the beam and in failing "to provide a seaworthy vessel, equipment and appliances".

1. See Osnovitz v. United States, D.C.E.D. Pa. 1951, 103 F.Supp. 238, affirmed 3 Cir., 1953, 204 F.2d 654; Lopez v. American-Hawaiian S.S. Co., 3 Cir., 1953, 201 F.2d 418; Brabazon v. Belships Co., 3 Cir., 1953, 202 F.2d 904, and Rogers v. United States Lines, 3 Cir., 1953, 205 F.2d 57. Cf. Crawford v. Pope & Talbot, Inc., 3 Cir., 1953, 206 F.2d 784, and Shields v. United States, 3 Cir., 1949, 175 F.2d 743, dissenting opinion at page 747.

Feinman makes no claim of error in that part of the court's charge to the jury concerning unseaworthiness but states that "[t]he sole question for decision is whether the Trial Judge committed reversible error relating to that phase of the case grounded in negligence, since we have expressly disclaimed any error relating to unseaworthiness."[2]

The trial judge charged the jury in respect to negligence in pertinent part as follows: "In addition to that [duty to maintain a seaworthy vessel] the plaintiff says that there is a duty on the part of the shipowner, the Bull Company, to furnish the plaintiff with a safe place to work, and failure to do that would be negligence. What is negligence? Negligence has been defined as the doing of an act which a reasonably careful, prudent man would not do under the particular circumstances of the case, or it may consist in the failure to do an act which a reasonably careful, prudent man would do under the circumstances of the case. The shortest and best definition I know is carelessness under the facts of the particular case." The court then stated: *"There is a concurrent duty on the part of both the shipowner and the employer to furnish this man with a safe place to work. The fact that there is a concurrent duty on the part of this man's employer would not excuse the shipowner from also meeting that obligation of furnishing a safe place to work * * * He must furnish a place that is reasonably safe for the duty to be performed. * * *"*

The trial court went on to charge as to the necessary exercise of care as follows: "I have said to you that the ship must supply a safe and seaworthy vessel and supply and keep in order appliances and equipment appurtenant to the ship, and that includes beams and beam sockets and slots and locks. That is the duty of the ship. Failure to do that would render the vessel unseaworthy, and if someone is injured as the proximate result of that failure—and that broken

slot would be a failure to do it—then, in that case, the ship would be responsible to an injured person. I am also now instructing you that *if the shipowner— that is the Bull Company in this case— surrendered control of the number 1 hatch to the shipbuilding company, and at that time the ship was seaworthy and there were no defective or broken appliances, and if thereafter, because of the improper handling of adequate and safe appliances by the employees of the Sun Ship Company, the beam was caused to fall, then there is absolutely no liability on the ship and your verdict should be for the defendant."* (Emphasis added to quotations from charge throughout.)

Feinman insists that in that portion of the charge last quoted and emphasized, the trial court " * * * conditioned a verdict for Feinman, predicated [sic] upon the concurrent negligence of Sun (in permitting the lifting gear to catch under the unlocked hatch beam), and the negligence of defendant (in permitting the existence of the hazardous condition created by the unlocked hatch beam) upon a *jury determination* of the issue of partial control." We are unable to feel the force of this argument. As we have stated there were circumstances from which the jury could have inferred that the hatch beam which fell upon Feinman was unlocked and had remained so since the Angelina had been unloaded by the Sugar Company in the Port of Philadelphia. Such circumstances could have afforded a basis, following a proper charge, for a finding by the jury that Bull was negligent. There were requests for charge by Feinman which looked generally but not specifically in this direction. In any event Feinman took only two exceptions to the charge. One was irrelevant to any issue raised by this appeal and the other was simply "with regard to surrendering control". The latter exception was not elaborated upon. Rule 51, Fed.Rules Civ. Proc. 28 U.S.C.A., provides that no party may assign as error " * * * the giv-

**2.** Feinman's brief on rehearing at p. 1.

ing or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict * * *." Feinman's real reliance at the trial was on evidence that the coaming in which the beam rested was defective.

 Obviously in a diversity suit brought by a longshore worker against a shipowner, based on negligence, as in the case at bar, the shipowner cannot be relieved of liability when the ship's appliances have become defective or broken simply because he has relinquished control of the vessel to a stevedoring company. On the other hand we cannot reverse the judgment at bar on the ground that the charge was insufficient when it was correct and Feinman made no objection to any failure of the trial judge to elaborate on it: *vide* the language used by the trial court and quoted above, "The fact that there is a concurrent duty on the part of this man's employer would not excuse the shipowner from also meeting that obligation of furnishing a safe place to work * * * He must furnish a place that is reasonably safe * * *."

Accordingly the judgment of the court below will be affirmed.