## JACKSON *v.* LYKES BROS. STEAMSHIP CO., INC.

No. 575.   Argued April 12, 1967.—Decided May 8, 1967.

  *Charles R. Maloney* argued the cause and filed a brief for petitioner.

  *Benjamin W. Yancey* argued the cause for respondent. With him on the brief were *William E. Wright* and *G. Edward Merritt.*

  MR. JUSTICE BLACK delivered the opinion of the Court.

  Luther Jackson, employed by Lykes Bros. Steamship Company, inhaled noxious gases and died while working as a longshoreman on a Lykes vessel on navigable waters. His widow, Helen Jackson, filed this action against Lykes in the Louisiana state trial court claiming that her husband's death was proximately caused either by Lykes' negligence in operating the ship or by the ship's unseaworthiness. Lykes moved to dismiss on the ground that § 5 of the federal Longshoremen's and Harbor Workers' Compensation Act provides that compensation

benefits required by that Act to be given by an employer to a longshoreman or his representative for "injury or death" "shall be exclusive and in place of all other liability of such employer to the employee."[1] The trial court, sustaining Lykes' motion on the ground assigned in it, dismissed petitioner's suit and the State Court of Appeal, Fourth Circuit, affirmed. 185 So. 2d 342. The Supreme Court of Louisiana finding "no error of law," denied a writ of certiorari. 249 La. 460, 187 So. 2d 441. We granted certiorari because it appeared that, in deciding as they did, the Louisiana courts had failed to follow our holding in *Reed* v. *The Yaka*, 373 U. S. 410.[2]

---

[1] 44 Stat. 1426, as set forth in 33 U. S. C. § 905, provides:

"The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . ."

Section 33 (a) of the Act, 44 Stat. 1440, as amended, set forth in 33 U. S. C. § 933, also provides compensation for injuries where third persons are liable:

"(a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person."

[2] The Court of Appeal, Fourth Circuit, affirmed the lower court's dismissal. That court, construing our recent opinion in *Reed* v. *The Yaka*, 373 U. S. 410, as permitting only an action against a vessel owned by an employer, concluded that the exclusive remedy provisions of the Longshoremen's and Harbor Workers' Compensation Act precluded petitioner from bringing a personal action against the shipowner employer. In so holding the Court of Appeal, Fourth Circuit, stated:

"An analysis of the Yaka case reveals language which suggests that an in personam remedy may be available; the analysis likewise reveals that there exists reason for believing that the section of the

The crucial facts in *Reed* v. *The Yaka* are strikingly similar to those in the present case. Reed, a longshoreman, covered by the federal Longshoremen's and Harbor Workers' Compensation Act, was injured while loading a ship. The ship was owned by the Waterman Steamship Corporation but was being operated by a bareboat charterer as owner *pro hac vice* which had directly employed Reed to work on the ship as a longshoreman. When Reed filed his suit for damages *in rem* against the ship, the ship defended on the ground that Reed being a longshoreman could not bring a personal action against the employer-owner *pro hac vice* because of the Act's exclusive recovery features and consequently he could not sue the ship. We rejected this contention on the express ground that Reed could sue the owner *pro hac vice* personally despite the Act and despite the fact that the owner *pro hac vice* was his employer.

We held in *Yaka* that a longshoreman employed by a shipowner as a longshoreman could sue the owner for the ship's unseaworthiness. In doing so we pointed out that in *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85,[3] and other cases following it, a group of maritime workers, including stevedores, carpenters, and longshoremen, although employed by an independent contractor to work on the ship, were allowed to sue the owner for unsea-

---

Longshoremen's and Harbor Workers' Act referred to hereinabove has been taken upon the judicial anvil and hammered into an unexpected shape.

"In any event, we are of the opinion that it exemplifies more judicial integrity to conclude that the rationale emanating from Yaka merely permits a longshoreman to bring an action in rem against his employer in the federal court." 185 So. 2d, at 345.

[3] *Sieracki* extended the doctrine of seaworthiness to a longshoreman, even though the longshoreman was not a member of the crew, and in spite of the fact that the longshoreman was entitled to compensation benefits under the Longshoremen's and Harbor Workers' Compensation Act.

worthiness of its ship.[4]  We also pointed out in *Yaka* that in *Ryan Stevedoring Co.* v. *Pan-Atlantic Steamship Corp.*, 350 U. S. 124, this Court had permitted a shipowner, sued by a longshoreman who had been directly hired by an independent stevedore employer under these circumstances, to bring an action over and recover from the independent stevedore employer despite the fact that the liability of the stevedore employer under the Act "shall be exclusive and in place of all other liability."

[4] In 1953 this Court held in *Pope & Talbot, Inc.* v. *Hawn*, 346 U. S. 406, that other kinds of maritime employees, besides stevedores, who performed jobs formerly done by seamen were entitled to the seaworthiness protection given in *Sieracki*.  There we said: "It is pointed out that Sieracki was a 'stevedore.'  Hawn was not.  And Hawn was not loading the vessel.  On these grounds we are asked to deny Hawn the protection we held the law gave Sieracki.  These slight differences in fact cannot fairly justify the distinction urged as between the two cases.  Sieracki's legal protection was not based on the name 'stevedore' but on the type of work he did and its relationship to the ship and to the historic doctrine of seaworthiness.  The ship on which Hawn was hurt was being loaded when the grain loading equipment developed a slight defect.  Hawn was put to work on it so that the loading could go on at once.  There he was hurt.  His need for protection from unseaworthiness was neither more nor less than that of the stevedores then working with him on the ship or of seamen who had been or were about to go on a voyage.  All were subjected to the same danger.  All were entitled to like treatment under law."  346 U. S., at 412–413.

Subsequent decisions in line with the general concepts put forth by this Court have read *Sieracki* expansively, and a wide range of maritime employees have been granted the benefits of the seaworthiness doctrine.  Carpenters (*Pope & Talbot, Inc.* v. *Hawn*, 346 U. S. 406); electricians (*Feinman* v. *A. H. Bull S. S. Co.*, 216 F. 2d 393); shipcleaners (*Torres* v. *The Kastor*, 227 F. 2d 664, and *Crawford* v. *Pope & Talbot, Inc.*, 206 F. 2d 784); repairmen (*Read* v. *United States*, 201 F. 2d 758); and riggers (*Amerocean S. S. Co.* v. *Copp*, 245 F. 2d 291), who performed jobs formerly done by seamen, have recovered from shipowners on the seaworthiness doctrine. See Note, 75 Yale L. J. 1174, 1183.

*Yaka* also stressed the fact that the traditional human-itarian remedy for unseaworthiness was not to be destroyed by the kind of employment contract that a shipowner made with the people who worked on the ship.

In this case as in *Yaka,* the fact that the longshoreman was hired directly by the owner instead of by the inde-pendent stevedore company makes no difference as to the liability of the ship or its owner. In the final analysis the contention here against recovery as in *Yaka* is that the longshoreman who is employed to work on a ship by an independent stevedore company instead of the shipowner can recover for the unseaworthiness of the vessel, but a longshoreman hired by the same shipowner to do exactly the same kind of work on an unseaworthy ship cannot recover. We reject this contention as we did before.[5] We cannot accept such a construction of the Act—an Act designed to provide equal justice to every longshoreman similarly situated. We cannot hold that Congress intended any such incongruous, absurd, and unjust result in passing this Act.

We adhere to *Yaka* and hold that the Louisiana courts committed error in dismissing petitioner's claim. Loui-siana courts have broad jurisdiction of admiralty cases such as this and have frequently exercised it. In this situation it is the duty of the Louisiana courts to adjudi-cate this case. The judgment is reversed and remanded for trial and further proceedings in the Louisiana courts

---

[5] *Reed* v. *The Yaka,* 373 U. S., at 415:

"We think it would produce a harsh and incongruous result, one out of keeping with the dominant intent of Congress to help long-shoremen, to distinguish between liability to longshoremen injured under precisely the same circumstances because some draw their pay directly from a shipowner and others from a stevedoring com-pany doing the ship's service. Petitioner's need for protection from unseaworthiness was neither more nor less than that of a longshore-man working for a stevedoring company."

not inconsistent with this opinion. *Testa* v. *Katt,* 330 U. S. 386; *Mondou* v. *New York, N. H. & H. R. Co.,* 223 U. S. 1; *Claflin* v. *Houseman,* 93 U. S. 130. See *Garrett* v. *Moore-McCormack Co.,* 317 U. S. 239.

*It is so ordered.*

MR. JUSTICE STEWART, whom MR. JUSTICE HARLAN joins, dissenting.

Luther Jackson was a longshoreman. He died from injuries received in the course of his employment. A federal law clearly imposes an absolute obligation upon his employer to pay compensation to his widow.[1] The law's humanitarian purpose is to ensure that all shall be compensated, regardless of the employer's fault. That law just as clearly provides that the employer's statutory obligation to pay this compensation "shall be exclusive and in place of all other liability . . . at law or in admiralty."[2] Nonetheless, Jackson's widow brought this admiralty action against his employer in Louisiana. The state courts dismissed the action, holding that the federal law means what it says.

The Court today holds that this federal law cannot mean what it says, because this would lead to an "incongruous, absurd, and unjust result." The Court says that the result it reaches is dictated by its prior decision in *Reed* v. *The Yaka,* 373 U. S. 410. The Louisiana courts thought that the *Yaka* case, which involved the intervention of a third party, was distinguishable, and so do I. But in any event I would decide this case on its own facts under the law as it was clearly written by Congress.

Congress, in setting up a federal system of workmen's compensation for longshoremen, imposing liability with-

---

[1] Longshoremen's and Harbor Workers' Compensation Act, §§ 4, 9, 44 Stat. 1426, 1429, 33 U. S. C. §§ 904, 909.

[2] *Id.,* § 5, 44 Stat. 1426, 33 U. S. C. § 905.

out fault upon employers, provided that this should be the exclusive remedy against the employer himself. I cannot agree that the law Congress passed is either "incongruous," "absurd," or "unjust." If it is, then so are the workmen's compensation laws of 49 States, all of which contain the same basic provision.[3]

But even if I could agree with the Court's characterization of the law that Congress has written, I could never agree with the Court's judgment. It is our duty to apply the law, not to repeal it.

I respectfully dissent.

---

[3] See 1 Schneider, Workmen's Compensation §§ 89–154 (3d ed.).