**HARDAWAY CONTRACTING COMPA-
NY and the Fidelity and Casualty Com-
pany of New York, Appellants,**

v.

**William M. O'KEEFFE, as Deputy Com-
missioner, Etc., United States Depart-
ment of Labor, Appellee (two cases.)**

Nos. 25276, 25492.

United States Court of Appeals
Fifth Circuit.

Nov. 14, 1968.

658

Ernest W. Welch, Panama City, Fla., for appellants.

Clinton Ashmore, U. S. Atty., Tallahassee, Fla., Burke Floyd, Apalachicola, Fla., Leavenworth Colby, Sp. Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for appellee.

Before TUTTLE, COLEMAN and MORGAN, Circuit Judges.

TUTTLE, Circuit Judge:

These appeals are taken by the insurance carrier and employer from an order of the district court which denied an injunction to set aside the compensation ordered paid by the appellee Deputy Commissioner, and which affirmed the award of benefits under the Longshoremen's Act, 33 U.S.C.A. § 901 et seq. to appellees Idel Tolbert, et al, and from a corrected final judgment awarding the appellees recovery of the amounts accrued under the original award, together with 20 percent additional compensation under 33 U.S.C.A. § 914(f), for delay in payment.

The first contention on the merits of the original award requires us to consider once again the troublesome question whether the decedent employee was excluded from the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., by reason of his being "a master or member of a crew of [a] vessel." Included within this question is the further question whether on the record before us the determination whether the decedent Rogers was or was not a member of a crew of a vessel is to be decided as a question of fact, or whether because of the substantially undisputed nature of the basic facts the determination of this issue is to be made by the court, notwithstanding the determination by the deputy commissioner and the trial court.

This appeal results from the denial by the trial court of an injunction against the enforcement of a determination by the Deputy Commissioner which included the following:

"* * * the decedent [Richard Gerald Rogers], while performing service for the employer as a laborer and while engaged in building a bridge from Cat Point, Florida, to Bulkhead Point, Florida, sustained personal injury resulting in his death, when, as he was standing on board the employer's vessel, 'Dutchman,' and loading diesel fuel tanks from the 'Dutchman' to the employer's other vessel, 'Panama,' both vessels being afloat in Apalachicola Bay near Bulkhead Point, Saint George Island, Florida, the claimant slipped and fell from the vessel, 'Dutchman,' into Apalachicola Bay and drowned; that the decedent was a laborer and not a seaman since he was not permanently attached to the vessel and his primary duties did not include aiding in the navigation of the vessel and such duties were rare, sporadic and incidental; that the decedent was on the navigable waters of the United States and engaged in loading the vessel, 'Panama'; that the claim comes under the provisions of the Longshoremen's and Harbor Workers' Compensation Act; * * *."

We conclude that the record amply supports the following findings of fact made by the trial court:

"1. The deceased was employed by Hardaway Contracting Company as a laborer and engaged in building a bridge from Cat Point, Florida, to Buckhead Point, Florida.

"2. The deceased duties were to assemble wooden forms called 'vents' on top of the pilings in connection with the construction of a bridge from Cat Point to St. Georges Island.

"3. That after the wooden forms called 'vents' were fitted on top of the

pilings, concrete was poured in the 'vents.'

"4. To then disassemble the forms and move the forms to the next set of piling in connection with the construction and flooring of a bridge being built.

"5. That the deceased was employed by Hardaway Contracting Company on land at a trailer parked on the shore at East Point, which was used as its office.

"6. The deceased was a laborer and paid on an hourly basis of $1.25 per hour, and $1.87 an hour for overtime.

"7. Each morning the deceased was transported from the mainland to his work on a boat designated as 'The Dutchman.'

"8. The deceased slept at home and took his meals at home, except for lunch, which he brought each morning from his home.

"9. The deceased workman had no seaman or maritime papers, but was working under a foreman of a crew as a laborer in connection with the construction of said bridge. * * *"

In addition to these findings, the trial court concluded: "The total circumstances show that the deceased was not a member of any crew of a vessel."

Part of the difficulty arising following claims of this character, which by their very nature are intended to be somewhat summary to the extent that the dependents of a deceased person who is truly covered by the act, are normally thought to be in need of immediate compensation, is that the Longshoremen's and Harbor Workers' Compensation Act and the Jones Act, 46 U.S.C.A. § 688, have been thought to be mutually exclusive (but see Jackson v. Lykes Bros. SS Co. (1967) 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488, later discussed). The Jones Act is for the protection of "seamen", which, by long court concern for the liberal policy exhibited by Congress, had been expanded to cover nearly every kind of worker engaged in or about any kind of vessel and the term "vessel" be-

came comprehensive enough to include nearly any kind of floatable or permanently affixed structure actually off the shoreline. See Offshore Co. v. Robison (5 Cir. 1959) 266 F.2d 769, 75 A.L.R.2d 1296, where this court said:

"The Act has always been construed liberally, but recent decisions have expanded the coverage of the Jones Act to include almost any workman sustaining almost any injury while employed on almost any structure that once floated or is capable of floating on navigable waters." (citing dissenting opinion of Mr. Justice Harlan in Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737.)

Nevertheless, there were situations in which persons working on, at, or near structures capable of floating on navigable waters were still not covered, and Congress enacted the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. covering all maritime workers except masters or "members of a crew of a vessel."

For a time there seemed to be the possibility that the Supreme Court recognized that the term "members of a crew of a vessel," as used in the Longshoremen's Act might be a more restricted term than the word "seaman" as used in the Jones Act. This is indicated in the landmark case of South Chicago Coal & Dock Co. v. Bassett (1940), 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732, in which Mr. Justice Hughes held that "the word 'crew' does not have an absolutely unvarying legal significance." The opinion further observed that, as used in the statute, "crew" seemed to mean "employees on the vessel that were *naturally* and *primarily* on board to aid in her navigation." (Emphasis added.) Based upon the Supreme Court's subsequent decision in Senko v. La Crosse Dredging Corp. (1957), 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404, our court has since concluded that the same test is to be applied to ascertaining whether a person is a "seaman" for purposes of Jones Act jurisdiction, or is "a member of a crew of a

vessel" for the purpose of Longshoremen's Act jurisdiction, although the opinions of this court have not been completely uniform in this regard.

We quote from the latest decision by the court, where in Boatel, Inc. v. Delamore (5 Cir. 1967), 379 F.2d 850, the court said:

"In the context used in this and similar cases involving the maritime amphibious worker on drilling craft offshore in the Gulf of Mexico, the difference between the two terms 'seaman' and 'member of the crew of any vessel' is so slight as to be virtually indiscernible, and, for all practical purposes, may be disregarded. The inquiry, therefore, is whether in determining if claimant was 'a member of the crew of any vessel', the Deputy Commissioner applied proper legal standards to undisputed facts relating to Delamore's status." 379 F.2d 850, 859.

Although it is to be noted that that language in that opinion related only to cases involving the "maritime amphibious worker on drilling craft offshore" in the Gulf of Mexico, nevertheless it hardly seems that any further reliance can be placed upon an assumed distinction between the two terms. See Bodden v. Coordinated Caribbean Transport, Inc. (5 Cir. 1966), 369 F.2d 273.

■ This, however, does not solve the problem, because the fact finder may find that one person is either a "seaman" under the Jones Act, or a "member of a crew of any vessel" under the Longshoremen's Act, whereas a different fact finder might, on the same state of facts, find exactly to the contrary. Thus it is that our court has been insistent that appeals from findings of fact ascertaining the status of such a worker are to be strictly limited to deciding whether the fact finder has acted in a manner that the appellate court can determine that the fact finder "has a reasonable basis, whether or not the appellate court agrees with the jury's esti-

mate." See Senko v. La Crosse, supra, 352 U.S. at p. 374, 77 S.Ct. at p. 417.

As stated by the court in Bodden v. Coordinated Caribbean Transport, supra, 369 F.2d page 275, "It would be the rare factual situation where the question could be resolved as a matter of law," citing Hawn v. American SS Co. (2 Cir. 1939), 107 F.2d 999; "It is impossible to define the phrase 'member of a crew', in general terms; the words are colloquial and their fringe will always be somewhat ragged. Perhaps the best hope is that, as the successive variants appear, they will finally serve rudely to fix the borders." 107 F.2d at p. 1000.

■■ Here it seems to us this language is peculiarly applicable. Based on the facts which we have heretofore stated were adequately supported as found by the trial court, we conclude that this is not such a case as was present in Boatel, supra, in which the court found that on the facts there ascertained by the deputy commissioner, it must be determined as a matter of law that the injured party "was a member of a crew." Such a result was required by the determination by the deputy commissioner that the injured person there performed all of his services aboard a vessel which was officially registered and inspected by the United States Coast Guard under circumstances which included his being assigned to work on a tender, and his primary duties were the care and maintenance of the diesel engines, generators, gauges, equipment in the engine room of the vessel itself; that he looked after the machinery and "looked after everything running." He held a United States Merchant Marine's seaman's papers issued by the Coast Guard as an ordinary seaman; he also ate and slept aboard the vessel as did all of the other members of the crew as well as those employed on the fixed platform (a drilling platform). He was considered by his employer as part of the crew, as an able-bodied seaman and part of the engine and deck department. Here none of these facts were present except that Rogers, at the time of his

death, was actually engaged in transferring an oil drum from a small launch to a fixed barge, and that he, on several occasions, had steered the small launch from the shore to the place where it was affixed during the day for the purpose of enabing him and his co-employees to do their work on the bridge.

The issue before the deputy commissioner was one of fact. The trial court properly found that his determination was reasonably supported, and we affirm the decision of the trial court based upon the facts adopted by it and restated in his findings outlined above.

The appellants in the second numbered appeal make the further contention that those provisions of the Longshoremen's Act, with reference to the assessment of penalties for failure to pay an award where an appeal has been entered and is pending, violates the employer's and insurance carrier's constitutional rights, including, but not limited to, due process of law and equal protection of the laws. The theory is that the Longshoremen's Act was originally enacted to eliminate the admiralty and common law actions that resulted from an injured employee in this type of work, whereas it is now contended that the decision of the Supreme Court in Jackson v. Lykes Bros. Steamship Co., 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488, holding that the exclusive remedy provision of the Longshoremen's Act did not bar a suit for negligence or unseaworthiness against the employer to recover damages for the death of a longshoreman who died as a result of injuries received at work, removes the ground for the court's prior approval of the Act. It is contended that this now makes unconstitutional the requirement that the immediate judgment be paid notwithstanding an appeal, when it cannot be forecast with certainty that another recovery for the same injury is foreclosed. Since the validity of the Longshoremen's and Harbor Workers' Compensation Act against the attack that it was unconstitutional and in violation of the due process clause of the Fifth Amendment was determined in Crowell v. Benson (1932), 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, we will perforce leave to that Court any modification of the law in this respect by reason of subsequent developments such as that contained in Jackson v. Lykes Bros., supra. We know of no constitutional limitation upon Congress' power to provide for benefits such as provided in the Longshoremen's Act in addition to possible recovery as a vicarious seaman, if this is the present state of the law.[1]

The judgment is affirmed.

1. It is contended by the respondent deputy commissioner and the United States, that the three year limitation on Jones Act suits has now expired, and the appellant would not have standing to raise the issue of constitutionality of this penalty provision of the Longshoremen's Act, since it can in no way suffer from any double exposure.