John M. HAMAN and Vivian Haman,
Appellants,

v.

ALLIED CONCRETE PRODUCTS, INC.,
and Modern Construction Com-
pany, Appellees.

No. 1388.

Supreme Court of Alaska.

April 7, 1972.

James R. Blair, of Rice, Hoppner, Blair
& Associates, Fairbanks, for appellants.

Dennis E. Cook, of Merdes, Schaible,
Staley & Delisio, Fairbanks, for appellees.

Before BONEY, C. J., and RABINO-
WITZ, CONNOR and ERWIN, JJ.

## OPINION

RABINOWITZ, Justice.

In this appeal, we are asked to overrule
Gordon v. Burgess Construction Co., 425
P.2d 602 (Alaska 1967).

In the superior court John Haman and
his wife brought suit against Allied Con-
crete and Modern Construction. The Ha-
mans sought the recovery of compensatory
and punitive damages against Allied Con-
crete under three separate counts. They
alleged that Allied Concrete leased to Mod-
ern Construction an automatic concrete
mixer which was mounted on a truck. It
was further alleged that the drive chain
which turned the rotating drum on the
mixer broke and struck John Haman in the
head resulting in disfigurement and in the
loss of his right eye. In the fourth count
of their complaint the Hamans asserted a
claim for relief against Modern Construc-
tion under AS 23.25.010.[1] In this latter

---

1. AS 23.25.010 provides:
   *Liability to employees for defects or
   insufficiency of machinery.* A person
   engaged in manufacturing, mining, con-
   structing, building, or other business or
   occupation carried on by means of ma-
   chinery or mechanical appliances *is
   liable* to an employee or, in the event

count it was stated that Modern Construction was, within the purview of AS 23.25.010, engaged in the construction business which was carried on by means of machinery or mechanical appliances, that John Haman was an employee of Modern Construction at the time he was struck by the defective drive chain, and that Modern Construction was guilty of gross negligence and wanton and willful misconduct.

Allied Concrete in its answer generally denied the Hamans' allegations and cross-claimed against Modern Construction on the basis of an indemnification clause in the lease under which the concrete mixer was rented to Modern Construction. Modern Construction moved for summary judgment on the grounds that John Haman was in its employ at the time of the accident, that at the time it had appropriate workmen's compensation insurance coverage, that under *Gordon*, John Haman's exclusive remedy, at least as to any claim for relief against Modern Construction, was under the Alaska Workmen's Compensation Act,[2] so that Haman could not ground a claim for relief on the provisions of AS 23.25.010. In their opposition, the Hamans urged that this court was incorrect in its decision in *Gordon*. The superior court granted Modern Construction's motion for summary judgment and dismissed with prejudice Count IV of the complaint.[3] The Hamans now appeal from the dismissal of their claim for relief against Modern Construction.

In this appeal the Hamans argue that the legislature did not intend that the exclusive remedy provision[4] of the Alaska Workmen's Compensation Act should bar a claim for relief under AS 23.25.010.[5] It is recognized that this same argument was rejected in Gordon v. Burgess Construction Co., 425 P.2d 602 (Alaska 1967).

The arguments presented by the appellant in *Gordon* are nearly identical to those presented by the Hamans regarding the effect of the exclusive remedy provision of the Compensation Act on the coverage of AS 23.25.010–040. In holding that appellant's action under AS 23.25.010 was properly dismissed because the alleged injury was covered by workmen's compensation, we stated:

We do not adopt appellant's argument that the Alaska Legislature, by continuing the Defective Machinery Act [AS 23.25.010–040] in existence after enactment of the Workmen's Compensation Act, evidenced its intent to exclude defective, dangerous machinery from the coverage of the Compensation Act in order to coerce employers to furnish safe machinery.

A more logical interpretation of the legislative intent, and that subscribed to by most courts, is that the remedies pro-

---

of his death, to his personal representative for the benefit of his widow and children, if any, or if none, then for his parents, or, if neither widow, nor children nor parents, then for his next of kin dependent upon him, for all damages which may result from the negligence of any of the employer's officers, agents, or employees, or by reason of defect or insufficiency due to the employer's negligence in the machinery, appliances and works.

AS 23.25.010–040 have been referred to as the "Defective Machinery Act."

2. AS 23.30.055 of the Alaska Workmen's Compensation Act provides in part:

The liability of an employer prescribed in § 45 of this chapter is exclusive and in place of all other liability of the employer and any fellow employee to

the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death.

3. This appeal does not involve the Hamans' claim for relief against Allied Concrete. The suit against Allied Concrete has not as yet gone to trial.

4. AS 23.30.055, quoted in part at note 2 *supra*.

5. It is not argued that John Haman's injuries are not covered by the Workmen's Compensation Act or that Modern Construction failed to comply with any of the employer's duties as set forth in that act.

vided by a workmen's compensation act are intended to be in lieu of all rights and remedies as to a particular injury whether at common law or otherwise. 425 P.2d at 605.

█ We also noted in *Gordon* that AS 23.25.010 has not been amended significantly since its original enactment in 1913. The Workmen's Compensation Act, however, has been amended numerous times. Over the years following the enactment of the first compensation act in 1915,[6] workmen's compensation coverage has been expanded to include an increasingly wide range of employers. Since the Compensation Act has always included an exclusive remedy provision, as its coverage of employments increased, the coverage of AS 23.25.010–040 necessarily was diminished. Thus we held in *Gordon* that AS 23.25.-010–040 have no application where the employee's injuries are covered by workmen's compensation.[7] We reaffirm *Gordon* and hold that its interpretation of the scope and coverage of AS 23.25.010–040 is correct.

We think this an appropriate occasion to discuss a facet of AS 23.25.010–040 which was not mentioned in *Gordon*. Taken to-gether, these statutes are a form of Employers' Liability Act. Apparently patterned after the Federal Employers' Liability Act,[8] AS 23.25.010 provides that employers engaged in specified occupations are liable.

for all damages which may result from the negligence of any of the employer's officers, agents, or employees, *or* by reason of defect or insufficiency due to the employer's negligence in the machinery, appliances and works. (Emphasis supplied.)

This clause describes two distinct causes of injury to the employee which give rise to the employer's liability under the statute: First, the negligence of the employer in providing defective or insufficient machinery, appliances and works; and second, the negligence of an officer, agent, or employee of the employer whether or not such negligence is related to defects or insufficiencies in the machinery, appliances and works. Thus, it appears that AS 23.25.010 is not, as the Hamans contend, concerned primarily with requiring employers to maintain safe equipment,[9] but covers a much wider range of causes of industrial injuries.[10] An examination of the history

6. This provision covered only persons "employing five or more employees in connection with mining operations carried on in this Territory . . . . " SLA 1915, ch. 71, § 1.

7. Gordon v. Burgess Constr. Co., 425 P.2d 602, 605 (Alaska 1967).

8. The language of 45 U.S.C. § 51 (1971) (first enacted in 1908) is quite similar to that of AS 23.25.010. It provides in part:
Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of the officers, agents, or employees of such carrier, or by reason of any defect

or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
*Compare* AS 23.25.020 *with* 45 U.S.C. § 53 (1971), both of which adopt a comparative negligence rule in markedly similar language, although the federal statute adopts a broader rule. AS 23.25.030 (a) provides that "[n]o contract of employment, insurance, relief benefit, indemnity for injury or death entered into by or on behalf of an employee, nor the acceptance of insurance, relief benefit, or indemnity by the person entitled to it constitutes a bar or defense to an action brought to recover damages for personal injuries to or death of the employee." This provision is similar in substance to 45 U.S.C. § 55, though different in form.

9. It is therefore inaccurate to term AS 23.25.010–040 a "Defective Machinery Act."

10. Cases brought under the Federal Employers' Liability Act show clearly that

and purposes of Employers' Liability Acts in general reveals that AS 23.25.010–040 were primarily intended to abrogate certain defenses traditionally available to an employer in a common law action brought by his employee for injuries suffered in the course of employment.[11] In an attempt to relieve employees of the harsher effects of the common law relating to the employment relation, a number of states enacted Employers' Liability Acts. While the various acts differed as to the types of employment covered and differed in their treatment of contributory negligence and assumption of risk,[12] they uniformly abrogated the fellow servant doctrine.[13] These

acts, however, did not create a new claim for relief as such for the employee. Even at common law an employee was able to sue his employer for negligence;[14] it was the employer's defenses that usually defeated his claim.

Once states having Employers' Liability Acts enacted comprehensive Workmen's Compensation Acts, the exclusive remedy provisions of the compensation acts were frequently held to have repealed the earlier liability acts to the extent that the liability acts purported to cover injuries also covered by workmen's compensation.[15] Gordon v. Burgess Construction Co., *supra*, is in line with these cases.

the scope of that act is not limited to injuries suffered as a result of defective or insufficient equipment, but that it applies as well to injuries resulting from the negligence of the carrier's "officers, agents, or employees" wholly unrelated to defective or insufficient equipment. *See, e. g.*, Hutchins v. Akron, Canton & Youngstown R. R., 162 F.2d 189 (6th Cir. 1947) (fellow employee signaled car in which plaintiff was riding to proceed when another car was approaching rapidly from nearby); St. Louis & S. F. Ry. v. Jeffries, 276 F. 73 (8th Cir. 1921) (alleged negligence in the engineer's failure to give a signal before increasing speed of train); Illinois Cent. R. R. v. Norris, 245 F. 926 (7th Cir. 1917) (brakeman between two cars knocked down and run over when conductor gave signal to back up train); Colasurdo v. Central R. R., 180 F. 832 (S.D.N.Y.1910), *aff'd*, 192 F. 901 (2d Cir. 1911) (plaintiff injured when fellow employees failed to warn him of approaching trains).

11. In this regard it is noteworthy that as originally enacted, AS 23.25.010–040 were entitled, "An Act to fix the liability of employers for personal injuries sustained by their employees." SLA 1913, ch. 45. In the early part of this century, when most of the Employers' Liability Acts were enacted, industrial accidents were becoming increasingly common. Yet injured employees had great difficulty successfully prosecuting claims against their employers for injuries suffered in the course of employment. Faced with the common law defenses available to the employer (contributory negligence, assumption of risk, and particularly the fellow

servant doctrine), a large proportion of industrial accidents went uncompensated. 1A Larson, Law of Workmen's Compensation § 4.50, at 28–30 (1968); W. Prosser, Law of Torts § 80, at 530, n. 32 (4th ed. 1971).

12. 1A Larson, Law of Workmen's Compensation § 4.50, at 30 (1968).

13. *See, e. g.*, Ala.Code § 326 (Recomp. 1958); Ark.Stats. § 81–1201 (1947); Minn.Stats.Ann. § 219.77 (1947); Gen. Laws of Idaho Ann. § 44–1401 (1948); Ind.Stats.Ann. § 40–1101 (1965); IC 1971, 22–3–9–1.

14. W. Prosser, Law of Torts § 80 (4th ed. 1971). As Professor Larson points out:

These so-called employers' liability statutes did not aspire to create any new principle of liability applicable to the employment relation as such. The most they ever set out to accomplish was was the restoration of the employee to a position no worse than that of a stranger injured by the negligence of the employer or his servants.

1A Larson, Law of Workmen's Compensation, § 4.50, at 29–30 (1968).

15. Pound v. Gaulding, 237 Ala. 387, 187 So. 468 (1939); Burns v. Southern Pac. Co., 43 Cal.App. 667, 185 P. 875 (1919); Harshman v. Union City Body Co., 105 Ind.App. 36, 13 N.E.2d 353 (1938); Bigby v. Pelican Bay Lumber Co., 173 Or. 682, 147 P.2d 199 (1944); *cf*. Williams v. Magma Copper Co., 5 Ariz.App. 236, 425 P.2d 138 (1967); Taswell v. General Matt Co., 30 N.Y.S.2d 145 (N.Y.City Ct. 1941).

In asking us to re-examine *Gordon*, the Hamans rely on a line of Supreme Court cases which hold that the exclusive remedy provision of the Longshoremen's and Harbor Workers' Compensation Act [16] does not bar a longshoreman from bringing a direct action against a shipowner for injuries caused by unseaworthiness of the vessel, even where the shipowner is also the longshoreman's employer. Reed v. Steamship YAKA, 373 U.S. 410, 83 S.Ct. 1349, 10 L. Ed.2d 448 (1963); Jackson v. Lykes Bros. Steamship Co., 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967). Prior to *Reed* and *Jackson*, the Supreme Court had held that a shipowner's duty to maintain a seaworthy vessel extended to longshoremen as well as to seamen, and that the Longshoremen's and Harbor Workers' Compensation Act did not bar a direct suit by the longshoreman against a shipowner based on unseaworthiness of the vessel. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

In *Reed*, the Supreme Court was faced with a dilemma. It had previously held in *Sieracki* that a shipowner owed an absolute, nondelegable duty to longshoremen to maintain a seaworthy vessel, and that a longshoreman could sue the shipowner directly for a breach of that duty. The Longshoremen's Compensation Act provided that an employers' liability under the act was "exclusive and in place of all other liability of such employer . . . at law or in admiralty . . . ." [17] Yet all longshoremen, whether employed directly by a shipowner or employed by a stevedoring company, faced the same hazards caused by an unseaworthy vessel. The Court admitted that on its face Section 905 would seem to bar a suit by a longshoreman against his shipowner-employer for breach of the duty of seaworthiness, yet held that Congress had a contrary intent.

This holding was founded on the Court's belief that

> it would produce a harsh and incongruous result, one out of keeping with the dominant intent of Congress to help longshoremen, to distinguish between liability to longshoremen injured under precisely the same circumstances because some draw their pay directly from a shipowner and others from a stevedoring company doing the ship's service. 373 U.S. at 415, 83 S.Ct. at 1353, 10 L.Ed.2d at 453.

Further, the Supreme Court reasoned that a shipowner should not be able to avoid its traditional obligation of seaworthiness simply because it was also an employer of longshoremen.

In the present appeal, we are not faced with such a dilemma. All workmen who suffer injuries due to the negligence of their employers in providing unsafe equipment are treated the same under the Alaska Workmen's Compensation Act. Further, the exception to the exclusive remedy provision of the Longshoremen's Compensation Act carved out in *Reed* and *Jackson* involves one limited situation where a stevedoring company is also a shipowner.[18] Industrial accidents involving the use of machinery or appliances are not unusual. The exception to the Alaska Compensation Act's exclusive remedy provision urged by the Hamans would seriously undermine, if not engulf, the comprehensiveness of that system of compensation.

We agree with the Hamans that the Workmen's Compensation Act does not by itself provide an incentive for employers to furnish safe equipment, and that such an incentive would promote desirable social ends. We also realize that the schedule of benefits under the Alaska Workmen's Com-

---

16. 33 U.S.C. § 905 (1971).

17. *Id.*

18. D. Proudfoot, "The Tar-Baby": Maritime Personal-Injury Indemnity Actions, 20 Stan.L.Rev. 423, 437–38 (1968).

pensation Act does not always realistically reflect the compensation needs of injured employees or their dependents. Generally these are matters for legislative, not judicial, consideration.[19]

The order of the superior court granting Modern Construction summary judgment is affirmed.

BOOCHEVER, J., not participating.

19. There are two bills currently before the legislature dealing with these matters. Senate Bill 349 would provide for a quarterly cost-of-living adjustment to all benefits payable under the act and would create a study commission to determine the adequacy of the present compensation benefits, and to determine if the act is broad enough in its present definition of compensable injuries. Senate Bill 254 would provide that compensation would be increased by one-half if the employee is injured by reason of "serious and wilful misconduct of his employer." In addition, the legislature has recently increased the compensation benefits payable under the Workmen's Compensation Act. SLA 1972, ch. 10.