Donald Cybulski, argued, Cleveland, Ohio, for plaintiff-appellant.

Richard Gurbst, argued, Kimberly M. Oreh, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant-appellee.

Before KRUPANSKY and RYAN, Circuit Judges, and CHURCHILL, District Judge.*

**Herbert A. KELLY, Plaintiff-Appellant,**

v.

**PITTSBURGH & CONNEAUT DOCK COMPANY, Defendant-Appellee.**

**No. 89-3263.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1989.

Decided April 10, 1990.

RYAN, Circuit Judge.

Plaintiff Herbert A. Kelly appeals the district court's order granting defendant's motion for judgment on the pleadings which the court treated, however, as a motion for summary judgment, Fed.R.Civ.P. 12(c). The plaintiff sought damages under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.,* for injuries suffered in the course of his employment. The district court held that plaintiff is foreclosed from recovering damages under the FELA because his exclusive remedy is provided by the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.*

Because plaintiff does not dispute that the LHWCA covers his injury, and because we find that the LHWCA's exclusive remedy provision, 33 U.S.C. § 905(a), precludes plaintiff's FELA action against defendant, we affirm the district court's judgment dismissing the action.

**I.**

Defendant Pittsburgh & Conneaut Dock Company receives and stores bulk commodities, primarily iron ore, limestone, and coal. The commodities are transported to defendant's business by rail and by ship, where they are unloaded and reloaded for

---

* The Honorable James P. Churchill, United States District Judge for the Eastern District of Michi-
gan, sitting by designation.

shipment elsewhere. Defendant's business is located in Conneaut, Ohio, adjacent to Lake Erie.

Plaintiff worked for defendant as a structural repairman, and on July 16, 1985 was repairing the No. 1 Shiploader at Dock 3 when he was struck in the head by an overhead hook and sustained injury. The No. 1 Shiploader is a conveyor used to load coal onto ships at Dock 3 and to unload coal from the railroad cars. At the time of plaintiff's injury, the No. 1 Shiploader was located about forty-five feet from, and adjacent to, the Lake Erie shore.

Plaintiff brought a personal injury action against defendant under FELA, 45 U.S.C. § 51 *et seq.* Section 51 provides, in part:

Every common carrier by railroad while engaging in ... [interstate commerce] ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, ... resulting in whole or part from the negligence of [the carriers] officers, agents or employees ..., or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

Defendant filed its motion for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), contending that: 1) plaintiff could not bring a FELA action against defendant because defendant was not a "common carrier by railroad" within the meaning of FELA; 2) plaintiff qualified for relief under the Longshore and Harbor Workers' Compensation Act (LHWCA) and its exclusive remedy provision barred the FELA claim; and 3) plaintiff was estopped from bringing the FELA action because he sought and received benefits under Ohio's workers' compensation statute. The district court found that plaintiff's exclusive remedy was the LHWCA and, therefore, declined to address the other two grounds raised by defendant in support of its motion.

The district court held that plaintiff was covered by the LHWCA because he met both the "situs," 33 U.S.C. § 903(a), and "status," 33 U.S.C. § 902(3), requirements of maritime employment under the act.

On appeal, plaintiff does not dispute the court's finding that he was covered by the LHWCA, but he asserts that the LHWCA and FELA provide concurrent remedies for railroad employees injured within the overlapping coverage areas of the two acts. We disagree.

## II.

The exclusive remedy provision of the LHWCA provides, in pertinent part:

The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, ....

33 U.S.C. § 905(a).

Plaintiff contends this exclusive remedy provision is not intended to be strictly construed in light of the Supreme Court decision recognizing the concurrent jurisdiction of the LHWCA and state workers' compensation laws, *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458, *reh'g denied,* 448 U.S. 916, 101 S.Ct. 37, 65 L.Ed.2d 1179 (1980), and Supreme Court decisions allowing benefits under the LHWCA and recovery under the unseaworthiness doctrine, *Reed v. S.S. Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), *reh'g denied,* 375 U.S. 872, 84 S.Ct. 27, 11 L.Ed.2d 101 (1963), and *Jackson v. Lykes Bros. Steamship Co.,* 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967). We do not believe either of these arguments support plaintiff's claim that LHWCA does not preclude an action under FELA.

### A.

#### State Workers' Compensation Acts and the LHWCA

In *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 *reh'g. denied,* 448 U.S. 916, 101 S.Ct. 37, 65 L.Ed.2d 1179 (1980), the Court held that the extension of federal jurisdiction inland under the 1972 amendments to the LHWCA "supplements, rather than supplants, state

compensation law" so that a state's workers' compensation law coexists with the LHWCA for land-based injuries covered by the federal act. 447 U.S. at 720, 100 S.Ct. at 2436.

In a footnote, the Court addressed the question whether the exclusive remedy provision of § 905(a) precluded recovery under a state workers' compensation law. The Court held it did not, stating:

Since that provision [§ 905(a)] predates the 1972 amendments, however, appellant's interpretation would also discredit our previous decisions in *Davis v. Department of Labor*, 317 US 249, 87 L Ed 246, 63 S Ct 225 (1942), and *Calbeck v. Travelers Insurance Co.*, 370 US 114, 8 L Ed 2d 368, 82 S Ct 1196 (1962). In fact, Calbeck upheld an award under the LHWCA against which had been credited payments made under the aegis of a state compensation statute; we noted that 33 USC § 905 was "not involved in this case," 370 US, at 132, n 16, 8 L Ed 2d 368, 82 S Ct 1196. Thus, we did not construe § 905(a) to exclude remedies offered by other jurisdictions. See Gilmore & Black 432–433, and n 335d; cf. *Industrial Comm'n v. McCartin*, 330 US 622, 91 L Ed 1140, 67 S Ct 886, 169 ALR 1179 (1947). The 1972 amendments signify no rejection of this interpretation.

*Sun Ship*, 447 U.S. at 722 n. 4, 100 S.Ct. at 2438 n. 4.

Relying on *Sun Ship*, plaintiff argues that concurrent jurisdiction likewise exists between LHWCA and the FELA. We think, however, that neither the history of the LHWCA nor the specific holding in *Sun Ship* warrants that conclusion.

### 1. History of the LHWCA

In 1927, Congress enacted the LHWCA to provide federal compensation to maritime workers injured upon "navigable waters" because Supreme Court decisions had repeatedly thwarted attempts by Congress to provide workers' compensation to these maritime employees through state compensation laws. *Northeast Marine Terminal Co., Inc. v. Caputo*, 432 U.S. 249, 256–57, 97 S.Ct. 2348, 2353, 53 L.Ed.2d 320 (1977).

*See also Sun Ship*, 447 U.S. at 717–20, 100 S.Ct. at 2434–36. For example, in *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), the Court held that a state's workers' compensation laws could not compensate a longshoreman injured on the seaward side of the pier because the federal government had exclusive admiralty jurisdiction over navigable water. In response, Congress enacted the LHWCA to provide compensation for injuries occurring "upon the navigable waters of the United States ... if recovery ... through [state] workmen's compensation proceedings [could] not be [ ] provided." 33 U.S.C. § 903; *Caputo*, 432 U.S. at 258, 97 S.Ct. at 2354; *Sun Ship*, 447 U.S. at 717–18, 100 S.Ct. at 2434–35.

The enactment of the LHWCA, together with state compensation laws, provided complete compensation coverage for maritime employees injured on the job. *Sun Ship*, 447 U.S. at 718, 100 S.Ct. at 2435. However, the injured maritime worker had a difficult time determining which remedy to seek. For example, the LHWCA did not apply to maritime workers whose work could be characterized as "maritime but local." Instead, such employment was covered by state compensation remedies on the basis that § 903(a) of the LHWCA allowed federal compensation only if compensation could not validly be provided by state law. In *Davis v. Dep't of Labor & Industries*, 317 U.S. 249, 256, 63 S.Ct. 225, 229, 87 L.Ed. 246 (1942), the Court effectively established concurrent jurisdiction between federal and state compensation schemes in this "maritime but local" sphere.

As the Court in *Sun Ship* summarized: Before 1972, then, marine-related injuries fell within one of three jurisdictional spheres as they moved landward. At the furthest extreme, Jensen commanded that nonlocal maritime injuries fall under the LHWCA. "Maritime but local" injuries "upon the navigable waters of the United States," 33 U.S.C. § 903(a), could be compensated under the LHWCA or under state law. And injuries suffered beyond navigable waters—albeit within the range of federal admiralty jurisdic-

tion—were remediable only under state law.

447 U.S. at 719, 100 S.Ct. at 2436 (citation omitted).

Historically, then, coverage under the LHWCA and state workers' compensation laws overlapped while coverage under FELA never overlapped with coverage under the LHWCA. *See Pennsylvania R.R. Co. v. O'Rourke*, 344 U.S. 334, 338–39, 73 S.Ct. 302, 304–05, 97 L.Ed. 367 (1953), where the Court held that the exclusive remedy provision of the LHWCA precluded recovery under FELA.

### 2. *Sun Ship*

In 1972, Congress amended the LHWCA. Recognizing that modern technology had moved much of the longshoreman's work to land, Congress broadened the definition of "navigable waters of the United States" to include "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling or building a vessel." 33 U.S.C. § 903(a); *Caputo*, 432 U.S. at 263–64, 97 S.Ct. at 2357. Thus, Congress extended the LHWCA's coverage inland where state compensation laws had in the past governed. Congress also removed the provision precluding federal recovery if a state workmen's compensation remedy was available. 33 U.S.C. § 903(a); *Caputo*, at 263 n. 21, 97 S.Ct. at 2357 n. 21.

In *Sun Ship*, the Court held that the 1972 amendments to the LHWCA extending federal jurisdiction inland "supplements, rather than supplants, state compensation law." 447 U.S. at 720, 100 S.Ct. at 2436. The court reasoned that since the pre–1972 act's coverage was concurrent with state remedies in the "maritime but local" zone, the post–1972 expansion of federal jurisdiction must also be concurrent. *Id.* The court found its conclusion of concurrent jurisdiction was further supported by the deletion of the language in § 903(a) allowing recovery under the LHWCA only if there was no recovery available under state compensation law. 447 U.S. at 720–21, 100 S.Ct. at 2436–37. The Court indi-

cated, in addition, that the legislative history did not suggest that state law would be excluded from compensating the land-based injuries now covered by the LHWCA following the 1972 amendments. *Id.* at 721, 100 S.Ct. at 2436–37. The Court concluded:

> We therefore find no sign in the 1972 amendments to the LHWCA that Congress wished to alter the accepted understanding that federal jurisdiction would coexist with state compensation laws in that field in which the latter may constitutionally operate under the Jensen doctrine.

*Id.* at 722, 100 S.Ct. at 2437.

In a footnote in *Sun Ship*, the Court rejected the plaintiff's assertion that 33 U.S.C. § 905(a), which provides that "the liability of an employer ... shall be exclusive and in place of all other liability of such employer to the employee," mandates the LHWCA's exclusive jurisdiction. 477 U.S. at 722 n. 4, 100 S.Ct. at 2438 n. 4. In keeping with pre–1972 decisions, the Court declined to construe § 905(a) "to exclude remedies offered by *other* jurisdictions" following the 1972 amendments. *Id.* (Emphasis added.) The Court also noted that concurrent jurisdiction did not mean double recovery since any compensation award under one scheme would be credited against compensation under the other. *Id.* at 725 n. 8, 100 S.Ct. at 2439 n. 8.

Plaintiff relies upon the holding in *Sun Ship*, allowing concurrent jurisdiction of state compensation laws and the LHWCA, for his argument that concurrent jurisdiction exists between FELA and the LHWCA, both federal laws. That contention was addressed in *Harmon v. Baltimore & Ohio R.R.*, 741 F.2d 1398 (D.C. 1984). The court stated:

> It would be a large and insupportable leap in logic to jump from a holding that permitted concurrent state and federal jurisdiction to a holding that permitted simultaneous coverage under two distinct federal statutes, especially given that the express language of Section 5 [905(a)] unequivocally states that liability of an employer under LHWCA shall be "exclusive and in place of all other

liability." Moreover, a critical basis for the Court's conclusion in *Sun Ship* was its observation that the "pre–1972 Longshoremen's Act ran concurrently with state remedies in the 'maritime but local' zone." 447 U.S. at 720, 100 S.Ct. at 2436. In stark contrast, the remedies available under FELA *never* ran concurrently with the LHWCA. *See, e.g.,* [*Pennsylvania R.R. Co. v.*] *O'Rourke,* [344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367 (1953), *reh. denied,* 345 U.S. 913, 73 S.Ct. 638, 97 L.Ed. 1347 (1953)]; *Nogueira* [*v. New York, New Haven & Hartford R.R. Co.,* 281 U.S. 128, 50 S.Ct. 303, 74 L.Ed. 754 (1930)]. We thus find no tension between the holdings that overlap is permissible between the LHWCA and state compensation schemes and the district court's holding that coverage under the LHWCA precludes coverage under the FELA.

*Id.* at 1405.

We agree with the *Harmon* court and conclude that neither the history of the LHWCA nor the holding in *Sun Ship* support the argument that the plaintiff here may recover for his on-the-job injuries under both the LHWCA and the FELA.

### B.

### Unseaworthiness Doctrine and the LHWCA

Plaintiff's second contention—that the exclusive remedy provision of the LHWCA was not to be interpreted literally as evidenced by the Supreme Court's holding that an employee may recover benefits under the LHWCA and sue his employer under the unseaworthiness doctrine—is similarly without merit.

Plaintiff relies on two cases decided prior to the 1972 amendments to the LHWCA, *Reed v. S.S. Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), *reh'g denied,* 375 U.S. 872, 84 S.Ct. 27, 11 L.Ed.2d 101 (1963), and *Jackson v. Lykes Bros. Steamship Co.,* 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967), in which the Court allowed maritime workers to recover damages under the unseaworthiness doctrine, notwithstanding the exclusive remedy provision of the LHWCA. The 1972 amendments extending the LHWCA inland eliminated the unseaworthiness remedy. *Caputo,* 432 U.S. at 261–62, 97 S.Ct. at 2356; *Sun Ship,* 447 U.S. at 724–25, 100 S.Ct. at 2438–39.

In *Caputo,* the Court explained that shipowners were one of the interest groups Congress attempted to accommodate by enacting the 1972 amendments to the LHWCA because shipowners were unhappy with court decisions which allowed many maritime workers to recover under the unseaworthiness doctrine. 432 U.S. at 261, 97 S.Ct. at 2356. The Court explained that with the 1972 amendments, Congress "eliminated suits against vessels brought for injuries to longshoremen under the doctrine of seaworthiness...." *Id.* at 262, 97 S.Ct. at 2356.

In *Sun Ship,* the Court again explained:

[T]he quid pro quo to the employers for the landward extension of the LHWCA by the 1972 amendments was simply abolition of the longshoremen's unseaworthiness remedy. See S Rep No. 92–1125, supra, at 4–5; HR Rep No. 92–1441, supra, at 1; *Northeast Marine Terminal Co. v Caputo,* supra [432 U.S.] at 261–262, 53 L Ed 2d 320, 97 S Ct 2348 [at 2356].

447 U.S. at 724, 100 S.Ct. at 2439. Thus, plaintiff cannot rely on *Reed* or *Jackson* because the 1972 amendments to the LHWCA eliminated any concurrent unseaworthiness remedy.

### III.

Finally, the Supreme Court recently held that railroad workers injured while maintaining or clearing equipment that is used to load and unload coal from ships are covered by the LHWCA and not FELA. *See Chesapeake & Ohio Railway Co. v. Schwab,* —— U.S. ——, 110 S.Ct. 381, 107 L.Ed.2d 278 (1989). In *Chesapeake,* the Court stated:

If respondents' injuries are covered by the Longshoremen's and Harbor Workers' Compensation Act, the remedy provided by that Act is exclusive and resort

may not be had to the Federal Employ-
ers' Liability Act, which provides a negli-
gence cause of action for railroad em-
ployees.

—— U.S. at ——, 110 S.Ct. at 383 (citations
omitted).

We conclude that the exclusive remedy
of the LHWCA bars plaintiff's FELA
claim. AFFIRMED.