**Harry Vincent BROWN, Plaintiff-Appel-
lee-Cross Appellant,**

**v.**

**ITT RAYONIER, INC., Defendant-Appel-
lant-Cross Appellee.**

**No. 73-2862.**

United States Court of Appeals,
Fifth Circuit.

July 18, 1974.

Walter C. Hartridge, Edwin D. Robb, Jr., Savannah, Ga., for defendant-appellant.

Arthur C. Farrar, Douglas, Ga., Arthur Roth, Miami, Fla., Curtis Farrar, Douglas, Ga., for plaintiff-appellee.

Before ALDRICH, Senior Circuit Judge [*], and BELL and GEE, Circuit Judges.

BELL, Circuit Judge:

From an $80,000 judgment, entered upon the court's findings that plaintiff-appellee was a Jones Act seaman at the time of his injury, and that he was injured by virtue of both his employer's negligence and the unseaworthiness of the employer's vessel, the employer appeals. The only issues raised by appellant-employer are whether appellee was a crew member of a vessel, and thus a seaman for the purposes of the Jones Act, and whether he was entitled to the warranty of seaworthiness. A cross-appeal challenges the sufficiency of the evidence to support the court's finding of appellee's contributory negligence, and a consequent 20 per cent reduction in the award. We affirm, although not as to all grounds advanced by the district court.

Appellee Brown was a college student who worked for appellant during vacations. At the time of his injury he was employed for several weeks at Christmas. His primary duties were to take samples of wood pulp within the plant and to conduct certain tests. On one occasion he was assigned to accompany another employee, Lott, on a three and one-half hour, 45-mile trip on the Altamaha River, in a 17-foot outboard motorboat. The purpose was to collect water samples in accordance with the plant's effluent control program. Lott, who had made the trip seven or eight times over a period of four months, operated the boat while appellee took samples at designated points, added appropriate reagents, and stored them for subsequent laboratory testing. In addition to operating the boat, Lott was responsible for supervising appellee's sampling procedures.

While travelling at 30 miles per hour or better, the boat struck a stump on the river bank. The evidence suggests that Lott was distracted by a friend on the bank, to whom both he and appellee had waved, or by appellee's questions concerning testing procedures, or by both. Appellee sustained broken bones, a concussion resulting in permanent double vision, and burns on his legs caused by the chemicals he was adding to the water samples.

The Altamaha trip was made once every week. No particular employees were assigned permanently to the trip, although normally the operator would be one of the plant's three environmental control technicians, and the sampler would be one of its two pulp testers. Company records indicate that appellee had made the trip on two occasions during preceding vacations. In any case,

---

* Senior United States Circuit Judge of the First Circuit, sitting by designation.

well under one per cent of his total time as an employee had been spent on the water and in the boat.

## I.

As posed by the parties, the first issue before us is whether appellee was a "seaman" as the term is used in the Jones Act, 46 U.S.C.A. § 688. More accurately, the issue is whether appellee was a member of a vessel's crew within the meaning of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C.A. § 901 et seq. The LHWCA is important by virtue of its exclusivity provision, 33 U.S.C.A. § 905 (1970). That section provides that the LHWCA is a covered employee's exclusive remedy against his employer, and LHWCA employees therefore may not recover from their employer for Jones Act negligence.[1] However the term "employee", as used in the LHWCA, does not include a "master or member of a crew of any vessel . . . ." 33 U. S.C.A. § 902(3) (1970). Since the Jones Act term "seaman" was originally construed so broadly as to include all maritime workers, International Steve-doring Co. v. Haverty, 1926, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157, the LHWCA in effect amended the Jones Act such that the term became synonymous with the LHWCA term "member of a crew". See Swanson v. Marra Bros., 1946, 328 U.S. 1, 7, 66 S.Ct. 869, 872, 90 L.Ed. 1045, 1049; Noble Drilling Corp. v. Smith, 5 Cir., 1969, 412 F.2d 952, 954–956. Thus if appellee was a crew member of the motorboat he may proceed against his employer under the Jones Act and the judgment of the court below is due to be affirmed.

As will become apparent in the course of this opinion, the issue at hand has much troubled this circuit and other courts. Neither "seaman" in the Jones Act, nor "member of a crew" in the LHWCA is defined by those statutes, and judicial efforts to fashion a definition have not produced a bright clear line of demarcation. Indeed, the myriad circumstances in which men go upon the water confront courts not with discrete classes of maritime employees, but rather with a spectrum ranging from the blue-water seaman to the land-based longshoreman. Nonetheless, the statute commands that a line be drawn. Further, its location can have enormous importance to individual workers—the Jones Act is exceedingly favorable when an injury may have been caused by an employer's negligence, but the LHWCA is the only route to significant recovery in many other circumstances.

■ The legislature of course is not precluded from dividing spectra into discrete classes, even if the result is that small distinctions make such great differences that the line appears arbitrary. See Village of Belle Terre v. Boraas, 1974, —— U.S. ——, ——, 94 S.Ct. 1536–1540, 39 L.Ed.2d 797, 804, n. 5, quoting from Louisville Gas Co. v. Coleman, 1928, 277 U.S. 32, 41, 48 S.Ct. 423, 426, 72 L.Ed. 770, 775 (Mr. Justice Holmes dissenting). However, when the legislative line is, as here, commanded but not defined, it must be developed case-by-case. This methodology inevitably accents the importance of the line's location in particular instances, and also invokes the judicial responsibility to reach principled results. Not surprisingly, the effect has been that no single, easily-administered distinction has developed. Such is the framework in which we must consider this case.

## II

The basic test used in this circuit for determining crew member status is that

---

1. However, prior to 1972, the LHWCA exclusivity clause did not, under Supreme Court decisions, preclude employer liability to certain covered workers for injuries resulting from the unseaworthiness of an employer's vessel. See below at p. 239.

stated in Offshore Co. v. Robison, 5 Cir., 1959, 266 F.2d 769, at 779: [2]

"there is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips."

See Dugas v. Pelican Construction Co., 5 Cir., 1973, 481 F.2d 773; Ross v. Mobil Oil Corp., 5 Cir., 1973, 474 F.2d 989; Keener v. Transworld Drilling Co., 5 Cir., 1972, 468 F.2d 729; Labit v. Carey Salt Co., 5 Cir., 1970, 421 F.2d 1333; Thomas v. Peterson Marine Service, Inc., 5 Cir., 1969, 411 F.2d 592; Rotolo v. Halliburton Co., 5 Cir., 1963, 317 F.2d 9; Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523

Appellant relies on this test and appellee's lack of permanent connection with the motorboat. While the "test" is more frequently an analytical starting point than a self-executing formula, we agree that in this case the connection does not have the permanency that it requires. See, e. g., Dugas v. Pelican Construction Co., supra; Cox v. Otis Engineering Co., 5 Cir., 1973, 474 F.2d 613; Ross v. Mo-

bil Oil Corp., supra; Labit v. Carey Salt Co., supra; Thomas v. Peterson Marine Service, Inc., supra; Rotolo v. Halliburton Co., supra.

Nonetheless, we have some hesitancy about denying appellee seaman's status on the basis of a wooden application of the permanency criterion. This is because the test has been developed and applied in circumstances somewhat different from those before us. McKie, Robison, and their progeny, to the extent they denied seaman's status, generally concerned land-based workers providing land-based services to docked vessels.[3] For example, Ross v. Mobil Oil Corp., supra, denied seaman's status to a shore-based welder aboard a vessel to facilitate loading by cutting header supports. Thibodeaux v. McDermott & Co., 5 Cir., 1960, 276 F.2d 42, reached the same result on similar facts. See also Rotolo v. Halliburton Co., supra (shore-based repairman temporarily aboard docked vessel); Labit v. Carey Salt Co., supra (conveyor belt operator who occasionally positioned barges for loading); Thomas v. Peterson Marine Service, Inc., supra (worker removing excess coconut oil from ship's hold).

In the present case we confront a somewhat different situation, one in which the injured worker was aboard the vessel while it was in transit, and in which he was aboard strictly for the purpose of aiding in its navigation.[4] Albeit his duties aboard would be brief, and his principal duties with his employer were on shore, he was at the time of his injury performing tasks that could only be performed while the vessel was

---

2. This statement of the law is an elaboration and refinement of the test stated earlier in McKie v. Diamond Marine Co., 5 Cir., 1953, 204 F.2d 132, at 136:

"that the ship be in navigation; that there be a more or less permanent connection with the ship; and that the worker be aboard primarily to aid in navigation."

The McKie formulation is restated in Cox v. Otis Engineering Co., 5 Cir., 1973, 474 F.2d 613; Barrios v. Louisiana Construction Materials Co., 5 Cir., 1972, 465 F.2d 1157; Williams v. Avondale Shipyards, Inc., 5 Cir.,

1971, 452 F.2d 955; and Bodden v. Coordinated Caribbean Transport, Inc., 5 Cir., 1966, 369 F.2d 273.

3. Exceptions are Dugas v. Pelican Construction Co., supra and Cox v. Otis Engineering Co., supra, discussed below at page 238 n. 6.

4. As made clear in the Robison test, an employee is aiding in a vessel's navigation even if his duties relate to its mission rather than its actual operation. Noble Drilling Corp. v. Smith, supra at 956.

under weigh and which, unlike services performed by shore-based workers upon docked vessels, were directly a part of the vessel's navigational mission. That this distinction has substance becomes obvious when we hypothesize one who is employed for the sole purpose of performing seaman's duties for a single short voyage. The temporary nature of the employment would surely not affect the employee's seaman's status during his period of service aboard the ship.

In this regard, we think it significant that while Keener v. Transworld Drilling Co., *supra*, held that temporary work as a seaman was insufficient to establish seaman's status for an injury occurring off the vessel, the case specifically left open the possibility that during performance of the temporary assignment the worker was a Jones Act seaman. *Id.* at 731. Similarly, in Long Island R. Co. v. Lowe, 2 Cir., 1944, 145 F.2d 516, the court rested its decision on an employee's duties on the day of his accident, even though his seaman-like assignment that day was not permanent. In short, we think that something other than the mere fact of a temporary relationship is involved in most cases which profess to deny seaman's status because of an absence of a permanent connection with the vessel.

■ Nonetheless, we conclude that the *Robison-McKie* test is properly applied here to deny status as a crewman. In part we base our conclusion on Dugas v. Pelican Construction Co., *supra*, and Cox v. Otis Engineering Co., *supra*.

While these opinions do not address themselves to the issue raised before us, they do deny crew member status to drill barge employees who apparently performed work directly involved in the drilling mission.[5] In each instance, the basis of the decision was the temporary, albeit operational, relationship with the vessel.

Further, while this is not an LHWCA case, and we are not required to determine whether appellee is entitled to an LHWCA award, we recognize that our decision on appellee's Jones Act claim contributes to the continuing process of defining the boundary between Jones Act and LHWCA coverage. See p. 236 *supra*. We think that this consideration militates against appellee's Jones Act recovery. In the first place, to the extent we must class appellee as either a seaman or a harbor worker, we think him much more akin to workers who clearly fall in the latter category. After all, it is merely incidental to appellee's shore-based employment that he has gone upon the water.[6] As we view it, he is the "casual worker on the water" who, under South Chicago Coal & Dock Co. v. Bassett, 1940, 309 U.S. 251, 260, 60 S.Ct. 544, 84 L.Ed. 732, 738, is more appropriately classed with shore-based workers than with seamen. Indeed, we think that as one who possibly could have been denied his state compensation protection for having strayed upon navigable waters, appellee is the type of land-based worker which Congress had in mind when enacting the LHWCA.[7]

---

5. *Cox* concerned a wireline operator assigned to a vessel for two days; *Dugas* concerned a roustabout engaged in transferring drill pipe from the barge's pipe racks to the drill platform.

6. It is precisely this observation which underlies the decision in Wheeler Shipyard v. Lowe, E.D.N.Y., 1935, 13 F.Supp. 863, aff'd, 2 Cir., 1936, 82 F.2d 1022, a case factually very similar to the one before us. There the courts affirmed the finding of a deputy commissioner that the deceased was not a crewman and could thus recover under the LHWCA.

7. In Southern P. Co. v. Jensen, 1917, 244 U. S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, the Court ruled that state compensation programs could not reach local workers injured on navigable waters. There followed two attempts to delegate authority to the states to provide compensation for such injuries. These efforts were struck down as unconstitutional in Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834, and Washington v. Dawson & Co. 1924, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646. Congress then enacted the LHWCA, providing a federal compensation remedy. For Su-

Second, were we to treat appellee as a crewman during his three and one-half hour trip on the water, we would produce the irrational result that he was protected by workmen's compensation principles throughout his employment, save for a brief period one afternoon when he was subject to the entirely different principles of the Jones Act. We do not think that such differences in the character and circumstances of employee protection should be governed by something as unimportant as an employee's precise location and duties at a given moment in the course of a single, integrated working day under one employer.

### III.

■■ There remains for decision the question whether the maritime character of his work entitled appellee to the warranty of a seaworthy vessel.[8] We emphasize at the outset that this is an issue which could not arise had this accident taken place after the effective date of the 1972 LHWCA amendments.[9] However, these events occurred at a time when the law clearly provided that certain persons could recover for the unseaworthiness of vessels on which they served even if they were covered by the LHWCA. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. Further, prior to the 1972 Amendments an employee could recover for a breach of the warranty of seaworthiness by a vessel owned by his employer, despite the LHWCA's exclusivity provision. Jackson v. Lykes Bros. S.S. Co., 1967, 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488; Reed v. Steamship Yaka,

1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L. Ed.2d 448. We are thus confronted with the possibility that while appellee is not a Jones Act seaman, he may nonetheless qualify for relief under the general maritime law. Well aware that such a holding produces exactly the irrational disparities which we sought to avoid in deciding the Jones Act issue, see p. 239 *supra*, we are constrained by the authorities applicable to this pre-amendments case to rule that in fact appellee is entitled to his unseaworthiness judgment.

In reaching this conclusion, we have of course not focused on the Jones Act question of whether Brown was a crew member within the LHWCA. Rather, we have focused on whether he was performing either a seaman's job or one formerly performed by seamen. *See* Seas Shipping Co. v. Sieracki, *supra* at 96–97, 66 S.Ct. at 878–879, 90 L.Ed. at 1107; Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 412–413, 74 S.Ct. 202, 206–207, 98 L.Ed. 143, 152–153. In this regard, we are persuaded by the facts that appellee was aboard a vessel which was actually under weigh in navigable waters in the course of performing its mission, and that his duties were directly involved in the mission. *See* Dugas v. Pelican Construction Co., *supra* at 778 (extending the warranty of seaworthiness to a roustabout who, although temporarily aboard a drill barge, was engaged in the drilling process). Further, we are aware of the Supreme Court's statement in Jackson v. Lykes Bros. S.S. Co., *supra,* 386 U.S. at 734, 87 S.Ct. at 1422, 18 L.Ed.2d at 491, n. 4,

---

preme Court reviews of this legislative history, see Calbeck v. Travelers Ins. Co., 1962, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368, and Nogueira v. New York, N. H. & H. R. Co., 1930, 281 U.S. 128, 50 S.Ct. 303, 74 L. Ed. 754.

8. Since appellant has not challenged the lower court's findings that the vessel was unseaworthy (by virtue of being inadequately manned and having a poorly-trained operator), and that appellee's injuries were proximately caused thereby, we need not consider

these basic requirements for appellee's judgment.

9. Section 18 of the 1972 amendments, codified at 33 U.S.C.A. § 905(b) (1974 Supp.), eliminated, for covered workers, shipowner liability under the warranty of seaworthiness (restricting such liability to that for shipowner negligence), and strengthened the exclusivity provision by protecting employers against indemnity liability to shipowners. *Cf.* Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.

**240**

that, "Subsequent decisions in line with the general concepts put forth by this Court have read Sieracki expansively, and a wide range of maritime employees have been granted the benefits of the seaworthiness doctrine."

### IV.

Appellee has challenged the sufficiency of the evidence relied upon by the district court to find that his negligence contributed 20 per cent towards causing the accident. While the issue is close, we conclude that the trial court's finding is adequately supported by evidence that appellee participated with Lott in waving to a friend on the bank, thereby possibly distracting Lott from his operator's duties, and by evidence that he made inquiries of Lott without regard to whether Lott could safely respond at that particular time.

The judgment of the court below is Affirmed.