**In the Matter of the Complaint of
DEARBORN MARINE SERVICE,
INC., C–W–D, Inc., Thoroughbred Marine Services, Inc., and Freeport Operations, Inc., for Exoneration from or
Limitation of Liability of the OIL
SCREW CARRYBACK.**

**Webster Barnwell ARMSTRONG, III,
Individually, etc., et al.,
Plaintiffs-Appellees,**

v.

**CHAMBERS & KENNEDY et al.,
Defendants-Appellees-Appellants,**

**Esther M. Love,
Intervenor-Appellant-Appellee.**

**No. 72–2704.**

United States Court of Appeals,
Fifth Circuit.

April 7, 1975.

Dissenting Opinion April 23, 1975.

Robert H. Roch, Houston, Tex., for Esther Marie Love.

T. G. Schirmeyer, L. Glen Kratochvil, Houston, Tex., for Dearborn, Thoroughbred, and others.

Edward W. Watson, Houston, Tex., for Chapman Contracting.

Alice Giessel, Henry Giessel, Houston, Tex., for Drilling Eng.

W. Eugene Davis, New Iberia, La., Donald L. King, New Orleans, La., for Chambers & Kennedy.

John N. Barnhart, Houston, Tex., for Lucille Monk.

Warner F. Brock, Houston, Tex., for Armstrong.

Carl Waldman, Ned Johnson, Beaumont, Tex., for Gaspard, Breaux and others.

William D. Hunter, Morgan City, La., for Cassel.

George B. Matthews, New Orleans, La., for Hartford.

H. Lee Howard, Lafayette, La., for Employers Reins. Corp.

Wm. P. Rutledge, Lafayette, La., O. H. Deshotels, Jr., Kaplan, La., for Melancon and others.

Emile A. Carmouche, Jr., Crowley, La.

Blake Tartt, Edward W. Watson, Houston, Tex., for Chapman and Home Indem. Co.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before AINSWORTH, GODBOLD and INGRAHAM, Circuit Judges.

PER CURIAM:

The Petition for Rehearing filed by Defendants-Appellants Dearborn Marine Service, Inc., C–W–D, Inc., Thoroughbred Marine Services, Inc., and Freeport Operators, Inc., is overruled. With respect to that petition, no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

The petition for rehearing filed by appellees Lucille Monk, et al., surviving dependents and personal representative of the estate of William C. Monk, deceased, is overruled. With respect to that petition, the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied, from which denial Chief Judge Brown dissents.

BROWN, Chief Judge, dissenting from denial of rehearing en banc:

*Executive Jet*[1] is the first Supreme Court case abandoning the traditional "ebb and flow of the navigable waters" test for admiralty tort jurisdiction. Today the Court lets stand a panel decision extending the rationale of *Executive Jet* to produce the result that one man's death is governed by two different systems of law. I think the result is wrong but in any event the question thus decided is an important one—and, therefore, worthy of consideration by the full Court.

In cases where the *Executive Jet* result was urged, but rejected, e. g., Atlantic Transport Co. v. Imbrovek, 1914, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208, the Court has shown itself receptive to a broad concept of maritime service. While the language in Part I of *Executive Jet* is broad, the actual holding in Part IV is narrowly drawn. It relies heavily on the fact (i) air transportation involves problems substantially different from those admiralty rules are designed to resolve, and (ii) the situs situation is highly fortuitous in cases of air disaster.[2]

---

1. Executive Jet Aviation v. Cleveland, 1972, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454.

2. "The anomaly is well illustrated by the hypothetical case of two aircraft colliding at a high

I am not convinced either factor has a counterpart in this case. The problems land-based parties face in protecting persons aboard nearby vessels have long been dealt with by admiralty rules, e. g., Kelly v. Smith, 5 Cir., 485 F.2d 520, cert. denied sub nom. Chicot Land Co. v. Kelly, 1974, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558; Re Motor Ship Pacific Carrier, 5 Cir., 489 F.2d 152, cert. denied sub nom. Union Camp Corp. v. Gypsum Carrier, Inc., 1974, 417 U.S. 931, 94 S.Ct. 2643, 41 L.Ed.2d 235. And I think the *Executive Jet* Court found fortuity an important factor because injury would have been sustained whether impact was with land or water. In this case Monk's situs on the High Seas was fortuitous, but he would not have sustained the instant injury *but for* that situs.

Nor should the panel have relied on Rodrigue v. Aetna Casualty & Surety Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360, for the proposition "Congress did not intend that application of state law necessarily should cease at the physical boundaries of the platform."[3] To the extent the panel means to rely on OCSLA,[4] I think it incorrectly interprets both *Rodrigue* and the legislative intent. The question Congress decided was whether to *extend* admiralty law inward—onto the platform. It decided not to, and relied on the *traditional* maritime principles relating to man-made structures attached to the ocean's floor—piers, wharfs, etc. I certainly find nothing in that rationale to support the panel's erosion of the traditional principles relating to persons injured on board vessels.

Experience demonstrates daily that *Rodrigue,* conceived by the Court in the beneficent object of protecting and advancing the rights of shore-based workers employed on offshore platforms by applying to them the legal rights accorded by the adjacent state, actually diminishes them and subjects them and their heirs to awful consequences of technical rules long since rejected by the admiralty. Thus we see rights accorded by the admiralty—indeed held applicable vis-a-vis M/V Carryback—taken away by the Texas rule on contributory negligence. Today it is contributory negligence. Tomorrow it will be the state statute of limitations. *See,* Huson v. Otis Engineering Corp., 5 Cir., 1970, 430 F.2d 27 at 27–28, aff'd on other grounds sub nom. Chevron Oil Co. v. Huson, 1971, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296. Next month it will be the stringent Louisiana "statutory employer" defense. *See,* Roelofs v. United States, 5 Cir., 1974, 501 F.2d 87, 90 n. 7.

The panel's basic position is Monk's presence aboard the vessel was non-maritime in nature. We do not have to make either a blue water or *Sieracki*-ambiguous-amphibious seaman out of him to make maritime principles the source of his (and his heirs') rights. But this Circuit has struggled long and hard with who is a "seaman", and I do not think those efforts were meant to be disturbed by the Supreme Court in the context of an airplane crash. To establish the ship-related status, I would apply by analogy the test announced in Offshore Co. v. Robison, 5 Cir., 1959, 266 F.2d 769, and just recently followed in Brown v. ITT Rayonier, Inc., 5 Cir., 1974, 497 F.2d 234. The main question under that test is whether "the duties which he performed contributed to the function of the vessel as to the accomplishment of its mission . . . ." Offshore Co. v. Robison, *supra,* 266 F.2d at 779. The important thing is the particular mission of that vessel, not necessarily that of an ocean liner or the Weehawken Ferry.

---

altitude with one crashing on land and the other in a navigable river. If . . . the respondent's position were adopted, jurisdiction would depend on whether the plane happened to be flying over land or water when the original impact of the alleged negligence occurred. This circumstance, too, could be totally fortuitous."

409 U.S. at 267, 93 S.Ct. at 504, 34 L.Ed.2d at 467.

3. Dearborn Marine Service, Inc. v. Chambers & Kennedy, 5 Cir., 1974, 499 F.2d 263, 273.

4. The Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1331 et seq.

In this case,

> [s]ince the platform was unmanned it was necessary that there be daily transportation from shore to platform and back to shore for those engaged in and supervising the work [period]. Also, of course, various materials, supplies, and equipment had to be transported to and from shore. . . . Each day for the period after it arrived from shore and until it returned to shore the *Carryback* remained in the vicinity of the platform, acting as a service and standby vessel. . . . the DEI supervisor, Monk, came aboard her to do office work where he could be away from the wind and noise of the platform and in air-conditioned surroundings.

499 F.2d at 267. While aboard M/V Carryback, Monk was certainly making a substantial contribution to that mission, because his needs were one of the important reasons the vessel was employed and there.

In *Brown, supra*, it was held appellant was not a "crew member", but Brown spent only about 1% of his employment time aboard any vessel. Even at that the Court recognized that the second part of the *Offshore* test (permanent assignment) should not be rigidly applied. *See*, Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523, rehearing denied, 1961, 289 F.2d 939. In this case, Monk's employer required him to spend a substantial amount of time aboard M/V Carryback.

It at least appears to me that the Court has broken from the established rule in this Circuit—and its result appears contrary, also, to that in other Circuits, e. g., Slatton v. Martin K. Eby Construction Co., 8 Cir., 1974, 506 F.2d 505; and Lewis v. Roland E. Trego & Sons, 4 Cir., 1974, 501 F.2d 372. Both those cases recognize (i) the question is not whether the worker was directly involved with the vessel's *navigation*, but rather its function and (ii) the worker need not be exclusively assigned to duties on the vessel.

Finally, this Reverian "one-if-by-land, two-if-by-sea", United States v. Ingham, 5 Cir., 1974, 502 F.2d 1287, 1290, approach, in which the very same person (Monk) on the very same vessel (M/V Carryback) for the very same catastrophe growing out of the very same acts or non-acts has rights measured under two antithetical standards depending on who is the pursued, introduces awful technicalities which in its generous liberality of both substance and procedure is anathema to the admiralty.

I would reverse the panel on the merits of this issue. But at the least it deserves reconsideration by the whole Court, considering the volume of OCSLA cases in the Fifth Circuit in the Nation's quest for precious energy.