Curtis COULTER, Plaintiff-Appellee,

v.

TEXACO, INC. and Insurance Company of North America, Defendants-Appellants.

No. 82-3734
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 12, 1983.

McGlinchey, Stafford, Mintz & Cellini, John E. Galloway, New Orleans, La., for defendants-appellants.

Carimi Law Firm, Terry A. Bell, Darryl J. Carimi, Gretna, La., for plaintiff-appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

PER CURIAM:

On January 10, 1980, Curtis Coulter suffered a severe knee injury while employed as a roustabout by Texaco, Inc., in its Lafitte Field, a water-surrounded oil field located in the marshland of Southern Louisiana. Coulter instituted this action against Texaco under the Jones Act and general maritime law and, thereafter, moved the district court for a summary judgment on the issue of Coulter's seaman status. Although Coulter's original motion for summary judgment was denied, a renewed motion for summary judgment was granted by the district court in favor of Coulter on September 15, 1982. The remaining issues in the case were tried to a jury and the jury returned a verdict in favor of Coulter in the amount of $400,000. Texaco has appealed to this Court alleging that the district court erred by granting Coulter's motion for summary judgment on the issue of seaman status. We affirm the district court's judgment.

In reviewing the district court's granting of the summary judgment, we apply well-settled principles. This Court must view the evidence and the inferences to be drawn therefrom in the light most favorable to the party opposing the motion. When viewed in this light, we must determine whether there is any genuine issue as to any material fact and whether the movant is entitled to summary judgment as a matter of law. See Fed.R.Civ.P. 56(c); Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); and United States Steel Corp. v. Darby, 516 F.2d 961 (5th Cir.1975). Ordinarily, whether the plaintiff is a seaman is a fact question to be resolved by the jury. Nevertheless, when there is no genuine factual dispute to be resolved on this issue, the district court may grant a summary judgment on the issue of seaman status. See Jenkins v. Aquatic Contractors & Engineers, 446 F.2d 520 (5th Cir.1971); and Producers Drilling Co. v. Gray, 361 F.2d 432 (5th Cir.1966). Having reviewed the evidence in the light most favorable to Texaco, we conclude that the district court properly granted Coulter's motion for summary judgment.

Under the Jones Act, "any seaman who shall suffer a personal injury in the course of his employment" has a right to claim damages in an action alleging that his employer was negligent. 46 U.S.C.A. § 688. The Jones Act contains no definition of "seaman" and this Court's decisions have emphasized that "no rigid set of circumstances" governs the result in a particular case. Additionally, we have emphasized that the term "seaman" must be liberally construed in light of the remedial purposes

of the Jones Act. *See Landry v. Amoco Production Co.,* 595 F.2d 1070 (5th Cir.1979). The basic issue of seamen status has been held, however, to involve the following two elements: (1) whether there is evidence that the injured work[er] was assigned permanently to a vessel . . . or performed a substantial part of his work on the vessel; and (2) if the capacity in which he is employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips." *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959).

As noted previously, Coulter was employed by Texaco in its Lafitte Field. It is undisputed that the only means of traveling from place to place in the Lafitte Field is by boat. Accordingly, Texaco has constructed vessels designed to transport the roustabouts to the work site. Significantly, these same vessels are specifically constructed to store and carry tools, pipe, or any other equipment necessary to the roustabouts' work. Moreover, these vessels were equipped with power tools, cranes, and other devices designed to allow the roustabouts to maintain the Lafitte Field. Indeed, work could be, and often was, performed on the deck of these vessels. The vessels are much more than mere sources of transportation. They provide the tools, equipment, and location for much of the work associated with Texaco's operation of the Lafitte Field. Simply put, it is clear, beyond material factual dispute, that Texaco's vessels were special purpose vessels designed for the particular purpose of assisting the roustabouts in navigating and maintaining the flow lines and wells in this water-surrounded oil field.

We also find no material fact issue as to whether Coulter performed a substantial part of his work on the vessel in furtherance of the vessel's mission—to assist in maintenance of the Lafitte Field. While employed by Texaco, Coulter worked a schedule of seven days on and seven days off. During his seven days on, Coulter was required to board one of Texaco's vessels to be transported to the work site. Texaco has only two special purpose vessels and Coulter was always assigned to one of the two vessels. As noted, all of the tools and equipment necessary for the day's work were carried on the vessel at all times. Moreover, the vessel often carried the worker's noon-day meal. The uncontradicted facts demonstrate that the roustabouts frequently performed their work on the deck of the vessels and are required to assist in the operations and maintenance of the vessel (*i.e.,* mooring and unmooring the vessel, replacing hydraulic lines or cables operating the anchor spuds, cleaning the deck, etc.). Indeed, on the day of Coulter's injury, he had performed part of his duties on the vessel—cutting, threading, and treating pieces of pipe used in maintaining the field. Suffice it to say that the evidence presented to the district court demonstrates beyond material factual dispute that Coulter was assigned permanently to one of Texaco's two vessels, performed substantial work aboard these vessels, and contributed to the function of these vessels.

For the foregoing reasons, the district court's judgment is affirmed.

AFFIRMED.

JERRE S. WILLIAMS, Circuit Judge, dissenting:

The district court granted a summary judgment holding that Curtis Coulter was a seaman at the time of his injury. This judgment entitled him to sue Texaco under the Jones Act and general maritime law for his injury. The parties have indicated oral argument is not necessary and they wish to submit the case on the briefs. Local Rules 28.2.4, 34.3.

Coulter is an oilfield roustabout. He worked at an oil rig located on land in a marshy area in Louisiana. Because the rig was located on an island, he was brought to and from the location by boat. During his seven day tour of duty he stayed in barracks located on land in the Lafitte field where the rig was located. He was injured

on the land while working at his assigned tasks in connection with the drilling operation.

He claims seaman status because a vessel is used by the company to aid in the drilling of the well. It brought workers and supplies, and it moored nearby the drilling rig. The evidence indicates that some of the work involving the drilling takes place on the vessel, and that Coulter worked on the vessel from time to time. There is even evidence that he was actually assigned tasks from time to time in cleaning up on the vessel and doing maintenance jobs on it, just as a roustabout would be assigned cleanup jobs and maintenance jobs around a drilling rig.

It is not my contention that Coulter lacks the status of seaman. My contention is that it was error to grant a summary judgment on these facts. We have spoken many times on these matters. It is well established that summary judgment on seaman status is rarely proper, and even marginal cases should go to the jury. *Bouvier v. Krenz,* 702 F.2d 89, 90 (5th Cir.1983).

In using the test set out in *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959), the majority of the Court in upholding the summary judgment is guilty of an approach which was the subject of specific disapproval in the *Bouvier* case. In that case we said:

> All of these formulations (of the *Offshore* test) express basically the same idea, and are not to be applied mechanically, but rather used as a guide in weighing the total circumstances of an individual's employment to determine whether they had sufficient nexus with the navigation of vessels and the perils attendant thereon to implicate the concerns of the Jones Act. *See Davis v. Hill Engineering, Inc.,* 549 F.2d 314 (5th Cir.1977); *Brown v. ITT, Rayonier, Inc.,* 497 F.2d 234 (5th Cir.1974). (702 F.2d at 90).

This weighing of the total circumstances is for the jury in all but the most obvious and certain case. With the injury on land of an oilfield roustabout working at the rig on land, the conclusion must be that there is

need to submit the issue of his claimed seaman status to the jury. Relying wholly upon the fact that he sometimes works on a vessel which is used in aid of the land-based drilling operation is a denial of the proper role of the jury in these cases. The vessel was simply an adjunct to a land-based drilling operation to which he was assigned, and the fact that he was used from time to time on the vessel did not change the real possibility that his basic status was that of a land-based oilfield roustabout.

It is the failure of the proper submission of this issue to a jury which compels me to dissent.