**Buddy KETNOR, Plaintiff–Appellant,**

v.

**AUTOMATIC POWER, INC.,**
**Defendant–Appellee.**

No. 87–3931.

United States Court of Appeals,
Fifth Circuit.

July 26, 1988.

Michael J. Navitsky, Dan C. Garner, John G. Munoz, New Orleans, La., for plaintiff-appellant.

Wood Brown, III, Elizabeth H. Ryan, New Orleans, La., for defendants-appellees.

Before THORNBERRY, WILLIAMS, and SMITH, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Buddy Ketnor was injured on a boat owned by his employer. He filed this action under the Jones Act, 46 U.S.C. App. § 688, general maritime law and, alternatively, the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950. The district court, 684 F.Supp. 907, on defendant's motion for summary judgment, concluded that as a matter of law Ketnor was not a seaman and dismissed the Jones Act and general maritime law claims. Because we find nothing in the record indicating that Ketnor was more than a mere passenger on the vessels he used, we affirm.

## I.

Buddy Ketnor was employed by the appellee, Automatic Power, Inc. (API), as a service technician. His duties were to check and repair navigational aids (lights and horns) on oil and gas wells in the Gulf of Mexico and in the inland waters of Louisiana. He was allegedly injured on the job when a gas line on a well ruptured.

API had three vessels that were to be used to reach the wells. The M/V MISS MILDRED, the boat from which Ketnor was departing when injured, was one of these vessels. Although Ketnor used these vessels to reach the wells, most of his physical work occurred on the wells rather than on the boats. He did, however, often do paperwork relating to his well servicing activities while on the boat and he occasionally put together parts for the navigational equipment he was to install on a well; he testified in his deposition that about 25% of his work was done on the boat and 75% on the wells.

Ketnor filed a claim relating to his injury under the Jones Act, general maritime law and, alternatively, the Longshoremen's and Harbor Worker's Compensation Act. API moved for summary judgment on the issue of Ketnor's seaman status. After oral argument on this issue, the district court granted the motion, dismissing Ketnor's Jones Act and general maritime law claims. Ketnor appeals.

## II.

The test for sending to the jury the determination of seaman status was recently restated by this court *en banc* in *Barrett v. Chevron, U.S.A., Inc.*:

[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel ... or performed a substantial part of his work on the vessel; *and* (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

781 F.2d 1067, 1072 (5th Cir 1986) (en banc) (emphasis added) (quoting *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir.1959)). A claimant will satisfy the "assigned permanently to a vessel" requirement if, rather than being assigned to a single vessel, he is permanently attached to a fleet of vessels. *Id.* at 1074.

The question of whether a claimant is a seaman is generally a jury question. *Id.* at 1072. "Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts." *Id.* at 1072–73 (quoting *Robison*, 266 F.2d at 779–80). Seaman status may be decided on summary judgment, however, when there is "no reasonable evidentiary basis" upon which a jury could rest a finding that the claimant is a seaman. *Id.* at 1074. That is, summary judgment is appropriate if either the evidence does not support a finding that the plaintiff is assigned permanently to or performs a substantial part of his work on the vessel or the evidence does not support a finding that the plaintiff contributed to the function of the vessel.

The district court on summary judgment held that Ketnor was not a seaman. The court first held that Ketnor was permanently attached to the defendant's fleet of vessels. The district court then held, however, that as a matter of law Ketnor did not meet the second prong of the seaman test—*i.e.*, Ketnor's job did not contribute to the function of the vessel. The court noted that he spent only about 25% of his work time on the vessels, during which he usually wrote up a log of his rig servicing activities. The court held that this activity did not "contribute to the function of the vessel, to its operation, welfare, or to the accomplishment of its mission," because Ketnor was "merely a passenger on the boat. He utilized the boat merely for transportation to and from various rigs on which he worked."

Ketnor challenges the district court's holding that he failed as a matter of law to meet the second prong of the seaman test. He argues that the sole purpose of the vessels was to examine and repair navigational aids. Thus, he argues, his employment, which was to service navigational aids on wells, clearly contributed to this purpose.

The appellees contend that Ketnor misstates the purpose of the vessels. They argue that the sole purpose of the vessels was to enable employees to reach the rigs to perform service operations. The vessels, they argue, were in essence merely "aquatic taxis" on which Ketnor was a passenger. Ketnor, as a passenger, thus did not contribute to the transportation function of the vessels.

The case with facts most analogous to the current case is *Munguia v. Chevron Co., U.S.A.*, 768 F.2d 649 (5th Cir.1985). In that case the plaintiff was a roustabout, or "jack of all trades," who worked on oil wells. The defendant maintained a number of boats for workers to use to reach the wells. The plaintiff spent 90% of his time "in the water," which included both time on the boats and on the wells. *Id.* at 651. A jury found that the plaintiff was a seaman, but the district court granted a judgment n.o.v., holding that the plaintiff as a matter of law was not a seaman. We affirmed. We held that the plaintiff only used the boats as transportation to and from the wells on which he worked; the evidence thus did not show that he performed a substantial part of his work on the boats. *Id.* at 653. As a matter of law, the mission

of the fleet in that case was to transport workers and their tools to the wells.

This pure transportation function differentiated the *Munguia* boats from the special purpose vessels "specifically constructed to store and carry tools, pipe, or any other equipment necessary to the roustabouts' work" that were at issue in *Coulter v. Texaco, Inc.,* 714 F.2d 467, 469 (5th Cir.1983) (per curiam). In *Coulter* the boats were much more than "mere sources of transportation." Those boats "were equipped with power tools, cranes, and other devices designed to allow the roustabouts to maintain the Lafitte Field" and all of the necessary equipment was carried on the vessels at all times. *Id.* Additionally, the roustabouts in *Coulter* frequently performed their work on the decks of the vessels. *Id.*

 *Munguia* illustrates that in the absence of any disputed facts the court is often able to determine the "function of the vessel" as a matter of law. In the present case, we find nothing in the record showing that the vessels were anything other than mere transport vehicles like those in *Munguia.* There is no evidence showing that the vessels were equipped with cranes, necessary power tools, or the like. Moreover, Ketnor did not generally service the rigs while on the deck of the vessel but stepped onto the rigs to perform the repairs. *See Kerr McGee Corp. v. Ma–Ju Marine Services, Inc.,* 830 F.2d 1332, 1337 (5th Cir. 1987) (holding that the most important factual distinction between *Coulter* and *Munguia* was that the seaman in *Coulter* frequently performed his job related duties on the deck of the vessel). Although Ketnor did frequently complete paperwork relating to his rig servicing while on a vessel, this paperwork was only incidental to his primary duty of servicing the rig. The paperwork could have been completed anywhere; the vessel did not contribute anything toward the completion of the paperwork. Such incidental work does not affect the determination of seaman status. *See id.* (quoting *Munguia,* 768 F.2d at 653) (the fact that a person does "incidental work" while on the vessel does not alter the conclusion that the vessel's function is transportation). We therefore hold that the evidence in the record compels a finding that the vessel's function was transportation rather than repair of the rig.

The work that Ketnor did do on the vessels in no way contributed to this transportation function. His primary duties did not include piloting, operating, or maintaining the vessels. Ketnor merely rode on the vessels to go from rig to rig so that he could perform his rig servicing duties on the rig. He thus was not a Jones Act seaman. *See Leonard v. Dixie Well Service & Supply, Inc.,* 828 F.2d 291, 295 & n. 20 (5th Cir.1987) (stating that one who is on a vessel merely as a passenger to and from offshore platforms is not a seaman).

### III.

We therefore find no error in the district court's granting API's motion for summary judgment on the ground that Ketnor as a matter of law was not a seaman. The judgment of the district court is

AFFIRMED.