Daniel R. WARWICK

v.

HUTHNANCE DIVISION, GRACE OFF-SHORE COMPANY and Transportation Insurance Co.

Civ. A. No. 90–0879.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

April 1, 1991.

Joseph David Painter, Lake Charles, La., for plaintiff.

James M. Tompkins, New Orleans, La., for defendants.

## MEMORANDUM RULING

EDWIN F. HUNTER, Jr., Senior District Judge.

Daniel Warwick seeks recovery against GOC arising from an injury that he incurred while working aboard the Phoenix Three (3) when he lifted a journal to replace a pin in an Emsco pump. Plaintiff premises his cause of action upon the Jones Act, 46 U.S.C. App. § 688 and Section 5(b) of the LHWCA. He asserts that he is a seaman and is entitled to the special remedies incident to the cited statutes.

GOC has filed a motion for summary judgment requiring that we determine Jones Act status and alternatively whether plaintiff's claim is cognizable under 5(b).

### Jones Act

The question of whether a claimant is a seaman is generally a factual determination for the jury. However, status may be determined on summary judgment where the record would not support a finding, as a matter of law, that the claimant is more or less permanently assigned to a Jones Act vessel. *Ketnor v. Automatic Power, Inc.*, 850 F.2d 236, 238 (5th Cir.1988); *Hemba v. Freeport McMoran Energy Partners, Ltd.*, 811 F.2d 276, 277 (5th Cir.1987); *Waguespack v. Aetna Life & Cas. Co.*, 795 F.2d 523, 526 (5th Cir.1986), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 163 (1987).

The existence of a vessel in navigation is a fundamental prerequisite to Jones Act jurisdiction and is at the core of the test for seaman status. The undisputed facts in this case are:

(1) Plaintiff worked intermittently for GOC from November of 1981 until May of 1984 aboard the Huthnance 11 and Huthnance 12, which are fixed platforms owned by GOC.

(2) He was rehired by GOC in January of 1988 as a roughneck aboard the fixed platform Huthnance 15.

(3) He was transferred on March 14, 1989 to the Phoenix II, a stacked jack-up rig owned by GOC that was undergoing extensive repair operations while positioned in the Sabine Pass.

(4) On May 10, 1989, plaintiff was then temporarily assigned to perform ship repairing duties aboard the jack-up rig GOC–1. He worked on the GOC–1 until May 15, 1989 when his hitch ended.

(5) When he returned to work on May 23, 1989, he was temporarily assigned to perform repairing duties aboard the stacked Phoenix III.

(6) From the time the plaintiff was assigned to the Phoenix II in March until he was injured on May 26th aboard the Phoenix III, the plaintiff was engaged solely in rig repairing activities.

(7) The Phoenix III was purchased by GOC on January 27, 1989. Prior to its purchase by GOC, it had been stacked in Sabine Pass for approximately three years. ("Stacked" is an oilfield term which refers

to a rig that is in "mothballs" and not operational).

(8) Because the rig was stacked for three years prior to its purchase by GOC, virtually every piece of equipment aboard the rig was deteriorated and not functional.

It is clear that for Warwick to assert a claim under the Jones Act, he must prove that the Phoenix III was a vessel "in navigation". *West v. United States*, 361 U.S. 118, 122, 80 S.Ct. 189, 192–93, 4 L.Ed.2d 161 (1959). In *West*, the ship had been in "moth balls" and was undergoing renovation to make her seaworthy again. Because of the magnitude of the undertaking and the fact that the contractor had complete control of the ship for this purpose, the Court held that the ship was not in maritime service (navigation). See also *Desper v. Starved Rock Ferry Company*, 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952); *Abshire v. Sea Coast Products, Inc.*, 668 F.2d 832 (5th Cir.1982); *Rogers v. United States*, 452 F.2d 1149 (5th Cir.1972). According to these cases, factors important in determining whether a vessel has been removed from navigation are:

1) The nature of the repairs being performed on the vessel. (See *Abshire*).
2) The duration of these repairs (*Abshire, Desper,* supra).
3) The cost of those repairs in comparison to the value of the vessel. (*Rogers*).
4) Whether the owner of the vessel has relinquished control of the repairs to a third party. (*Abshire*).
5) The length of time in which the vessel was laid up or stacked. (*Desper, Abshire*).
6) Whether the repair work was typical of work performed primarily by shore-based employees. (*Abshire, Desper*).

It would be rehashing the obvious to say that the facts of this case clearly illustrate that there is no genuine dispute in concluding that the Phoenix III was not "in navigation". The nature of the repairs was such that every major piece of equipment aboard the Phoenix III was being dismantled, disassembled and refurbished. Because of the extensive repairs to virtually every part of the Phoenix III, it clearly could not perform drilling operations. Further, because control of almost all of the rig's equipment was surrendered to repair shops in neighboring towns, it was *impossible* for employees of GOC to have made the Phoenix III operational without the assistance of third parties. The cost of the repairs was extensive. The estimated value of the Phoenix III at the time of its purchase was only eight million dollars due to its deteriorated condition. The cost of refurbishing the vessel was approximately two and one half million dollars.

The Phoenix III had been stacked in Sabine Pass for three years prior to its purchase by GOC. The control of the rigs equipment was surrendered to repair shops in neighboring towns. The repair work was typical of work performed primarily by shore based employees. The rig at the time of the accident was incapable of navigating under its own power. The fact that the vessel had been in navigation three years earlier and was expected to once again be in navigation in eight months or so does not alter its status in May of 1989.

The *Rogers* case (supra) is clearly inapposite here. There the repairs were relatively minor and the rig was stacked for only ten (10) days. Obviously the court in *Rogers* was concerned that workers "would walk in and out of coverage" every time the rig on which they worked underwent minor repairs. By way of repetition the Phoenix III was stacked for more than three years during which it had neither captain nor crew and remained stacked for months after the accident upon which this case is premised. We conclude that the Phoenix III was not a vessel for Jones Act purposes in May of 1989.

■ Because of our resolution of vessel status issue, we need not necessarily address GOC's contention that the Longshore and Harbor Workers' Compensation Act is Warwick's exclusive remedy. But, we feel it clear that Warwick falls within that coverage. For two months prior to the accident, he was engaged solely in ship repair-

ing activities, an expressly enumerated occupation under the Act.[1]

33 U.S.C. § 902(4).

### The 905(b) Claim

■ Seeking to avoid the exclusions of his employer's liability under the LHWCA, plaintiff seeks relief under 33 U.S.C. § 905(b) which allows employees to sue the owner of a vessel for negligence. However, a 1984 amendment specifically prohibits such negligence suits if:

> "such person was *employed to provide ship building, repairing* or breaking services and *such person's employer was the owner,* owner pro hac vice, agent, operator or charterer *of the vessel, no such action shall be permitted,* in whole or in part, or directly or indirectly against the injured person's employer ..."

33 U.S.C. Section 905(b).

Similarly, in *Fredieu [v. Rowan Co., Inc.,* 738 F.2d 651 (5th Cir.1984)], the plaintiff was hired as a floorhand on the drilling rig Charles Rowan. At the time of his injury the plaintiff was assisting in repairs designed to convert the vessel into a drilling rig. The Appellate Court affirmed the District Court's finding that the plaintiff was a ship builder instead of a floorhand for purposes of Section 905(b).

*Garrett* and *Fredieu* requires that we focus on the job activities an employee actually performs rather than the job description assigned to him at the time he is hired. Warwick may have been hired eventually to work as a roustabout or floorhand, the fact is that for the two months prior to his injury he was employed to perform ship repairing activity and therefore must be considered a "ship repairer" for purposes of Section 905(b). Accordingly, GOC is entitled to a Summary Judgment dismissing his 905(b) claim.

"Repair" work in 905(b) must be given its ordinary meaning, "to restore to a sound or healthy state". *New v. Painting Services,* 863 F.2d 1205, 1210 (5th Cir.1989). Because Warwick was engaged solely in ship repairing activities for months prior to and at the time of his accident, he is precluded from asserting a claim for vessel negligence against his employer GOC. The same reasoning applies to Warwick's unseaworthiness claim as section 905(b) provides that "the liability of a vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred."

### Conclusion

The Phoenix III was not a vessel in navigation at the time of the accident and, therefore, plaintiff was not a seaman within the meaning of the Jones Act. The LHWCA prohibits plaintiff from recovering from his employer, GOC, on his general maritime law negligence and unseaworthiness claims. The sine qua non of 905(b) statutory liability for vessel negligence is the presence of a vessel which admiralty regards as a separate entity from its owner. See Chief Judge Clark's in panel dissent. 784 F.2d 580, 589. There it ends as does this memorandum.

Summary Judgment granted.

---

**1.** The (LHWCA) is not a simple remedial statute intended for the benefit of the workers. Rather, it was designed to strike a balance between the concerns of the longshoremen and harbor workers on the one hand, and the employers on the other. Employers relinquished their defense to tort actions in exchange for limited and predictable liability. Employees accept the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail.

*Morrison–Knudson Constr. Co. v. Director, Office of Workers' Compensation,* 461 U.S. 624, 636, 103 S.Ct. 2045, 2052, 76 L.Ed.2d 194 (1983); see also *Peter v. Hess Oil Virgin Islands Corp.,* 903 F.2d 935, 951 (3d Cir.1990).